No. 14,810.

CONTINENTAL CASUALTY COMPANY *v.* RIO GRANDE FUEL COMPANY.
(119 P. [2d] 618)

Decided October 27, 1941. Rehearing denied December 1, 1941.

Mr. G. Dexter Blount, Mr. Samuel M. January, Mr. Ronald V. Yegge, for plaintiff in error.

Messrs. Alter & Upton, Mr. Sidney P. Godsman, for defendant in error.

*In Department.*

Mr. Justice Otto Bock delivered the opinion of the court.

An action by the Rio Grande Fuel Company, defendant in error, plaintiff below, to enforce liability on a

contractor's bond executed by the Continental Casualty Company, plaintiff in error, as surety, in compliance with the provisions of section 6, chapter 39, '35 C.S.A., and which was given to insure the performance of a contract awarded to one Carlson by the State Highway Department. Briefly, the stipulated facts are: That plaintiff furnished and delivered the materials, itemized in a bill of particulars, to Carlson, the contractor, who was made a party defendant, but who made no appearance in the trial court, and does not appear here; that Carlson used and consumed the materials in the performance of the construction contract which was dated November 9, 1936; that the bond in question, among all other conditions, stipulated: "And if the said contractor, his sub-contractor or sub-contractors and each and all of them shall duly pay for all labor, materials, team hire, sustenance, provisions, provender and other supplies used or consumed in the performance of the work contracted to be done or any part thereof, these presents shall become void, otherwise to be and remain in full force and effect"; that the project covered by the contract was duly completed by Carlson, and the state highway engineer gave notice by publication as provided by section 7, chapter 39, '35 C.S.A., that final settlement would be made on and after October 15, 1937; that on the last-mentioned date there was a balance on hand in the State Highway Department of $6,238.23 due said Carlson for the performance of said contract, which balance was withheld by the department as retained percentages under the provisions of said section 7, and was paid over to Carlson by the State Highway Department November 17, 1937; that there was due plaintiff from Carlson the sum of $1,852.53, which was reduced by a dividend from the bankrupt estate of Carlson to the sum of $1,668.18; that plaintiff never at any time filed a verified statement of its claim against Carlson with the State Highway Department, and never filed notice of lis pendens; that on the date of payment to said Carlson

November 17, 1937, no claims of any kind or character were on file with the State Highway Department by any persons who had furnished labor or materials for the construction referred to above; that March 25, 1938, Carlson was duly adjudged a bankrupt in the federal court, and that this suit was commenced May 13, 1938. Judgment was entered in favor of plaintiff in the amount stipulated.

Counsel for the surety company contend that plaintiff should not recover for the two reasons alleged as affirmative defenses, that is to say: (1) That plaintiff's failure to file its claim with the highway department within the time prescribed by section 7, supra, to preserve its liens against the retained percentages in the hands of the highway department, released the surety from any liability under the bond; (2) that the failure to file suit against the surety under the bond, within ninety days from October 15, 1937, the date fixed for final settlement, barred plaintiff from maintaining this action by virtue of the provisions of said section 7.

Since the surety company primarily relies upon the second ground, we give it first consideration. This involves an examination of sections 6 and 7, supra, which, owing to their importance to a determination of the issue, we quote in full:

"§6. Every contractor to whom is awarded any contract for more than $1,000.00 for the construction, erection, repair, maintenance, or improvement of any building, road, bridge, viaduct, tunnel, excavation or other public work for this state, or for any county, city and county, municipality, school district or other political subdivision of the state, shall, before entering upon the performance of any such work included in said contract, duly execute, deliver to and file with the board, officer, body or person by whom such contract was awarded a good and sufficient bond to be approved by such contracting board, officer, body or person in a penal sum not less than one-half of the total amount payable by

the terms of the contract; such bond shall be duly executed by qualified corporate surety, and conditioned for the due and faithful performance of the contract, and providing, in addition to all other conditions, that if the contractor, or his or its sub-contractor or sub-contractors fail to duly pay for any labor, materials, team hire, sustenance, provisions, provender or other supplies used or consumed by such contractor or his or its sub-contractor in performance of the work contracted to be done, the surety will pay the same in an amount not exceeding the sum specified in the bond, together with interest at the rate of eight per centum per annum. Unless such bond is executed, delivered and filed as herein provided, no claim in favor of the contractor arising under such contract shall be audited, allowed or paid.

"§7. Any person, co-partnership, association of persons, company or corporation that has furnished labor, materials, team hire, sustenance, provisions, provender or other supplies used or consumed by such contractor, or his or its sub-contractor, in or about the performance of the work contracted to be done, and whose claim therefor has not been paid by the contractor or the sub-contractor, may at any time up to and including the time of final settlement for the work contracted to be done, which final settlement shall be duly advertised at least ten days prior thereto by publication of notice thereof at least twice in a public newspaper or newspapers of general circulation published in the county or counties wherein the work was contracted for and wherein such work was performed, file with the board, officer, person or other contracting body by whom the contract was awarded, a verified statement of the amount due and unpaid on account of such claim. And upon the filing of any such claim or claims, such board, officer, person, or other body awarding the contract shall withhold from all payments to said contractor, sufficient funds to insure the payment of said claims, until the same have been paid or such claims as filed shall have

been withdrawn, such payment or withdrawal to be evidenced by filing with the person or contracting body by whom the contract was awarded a receipt in full or an order for withdrawal in writing and signed by the person or persons filing such claim, or their duly authorized agents or assigns, provided, that such funds shall not be withheld longer than ninety days following the date fixed for final settlement as published in the manner hereinbefore provided, unless an action shall be commenced within that time to enforce such unpaid claim and a notice of lis pendens be filed with the person or contracting body by whom the contract was awarded. At the expiration of such ninety-day period the person or other body awarding the contract shall pay to the contractor such moneys and funds as are not the subject of suit and lis pendens notices, and shall retain thereafter, subject to the final outcome thereof, only sufficient funds to insure the payment of judgments which may result from such suit or suits. Failure on the part of a claimant to comply with the provisions hereof shall relieve the board, officer, body or person by whom such contract was awarded from all and any liability therefor, payment to the contractor having been made; and further provided, that the provisions of this section shall apply to moneys and funds now or heretofore withheld by a board, person or other contracting body on such unpaid claims, and such ninety-day period for the filing of suits shall commence to run at the time sections 5 to 7 of this chapter shall take effect and become a law. At any time within ninety days following the date fixed for final settlement as published in the manner hereinbefore provided, any person or persons, co-partnership, association of persons, company or corporation, or his, their or its assigns, whose claims have not been paid by any such contractor or sub-contractor, may commence an action to recover the same individually or collectively, against the surety on the bond specified and required in the last preceding section."

478

Counsel for the surety company urge that since the remedies afforded persons furnishing labor or materials under a public construction contract are purely statutory, they are absolutely limited by the terms of the statute, and therefore, unless plaintiff brought its suit within ninety days, as provided by section 7, supra, it is barred to sue on the bond. In support of this contention they cite *State Board of Agriculture v. Dimick,* 46 Colo. 609, 105 Pac. 1114. The holding in this case simply was, that where a building contract contained no requirement that the contractor pay for labor and materials entering into the construction of the building, a bond running to the contracting board to secure the performance of the contract could not be construed to extend to laborers and materialmen so as to support an action on the bond instituted by the board for their use. The opinion affords no assistance in solving the problem before us and is not in point. Counsel for the surety company advance the proposition that where the statute itself prescribes the time within which a suit on the bond may be brought, the surety cannot be held liable if the action actually is instituted after the time limit has expired. They cite a number of cases in support of this statement, relying primarily upon *United States F. & G. Co. v. Tafel Electric Co.,* 262 Ky. 792, 91 S.W. (2d) 42, 44. The answer is that all of these cited cases involve statutes which make mandatory the bringing of suit on the bond within a definite time. As an illustration, the language of the statute involved in the *Tafel Electric Company* case is, that the action on the bond *"shall be brought* or claims so filed within six months following the completion of such public work, or of the furnishing of such labor or materials." As showing the contrast between this language and that used in our statute, we again quote from section 7, as follows: "At any time within ninety days following the date fixed for final settlement * * * any person or persons * * * whose claims have not been paid * * * *may commence*

an action to recover the same individually or collectively, against the surety on the bond specified and required in the last preceding section." The distinction is readily apparent—one statutory provision is mandatory, the other permissive. It is urged that the language last quoted, contained in section 7, must be construed to have some legislative purpose, and that is true. The only penalty for omission to file a claim with the board under said section is: "Failure on the part of a claimant to comply with the provisions hereof shall relieve the board, officer, body or person by whom such contract was awarded from all and any liability therefor, payment to the contractor having been made." From this it may fairly be conceived that the legislative intent was to provide a lien on the funds held by the board as a contract creditor for a period of ninety days, and a failure to file claim and bring the action within that time constituted a waiver or the loss of the remedy provided for reaching impounded funds.

 Since the benefits of our mechanic's lien act do not apply to projects constructed by governmental agencies, for the protection of those furnishing supplies or material for such projects, the legislature provided a remedy somewhat similar to our mechanic's lien statutes by the enactment of said chapter 39. *Western Co. v. Golden,* 23 Colo. App. 461, 130 Pac. 1027. There may be a number of reasons why the General Assembly made it permissive within the ninety-day period after the date of final settlement for laborers and materialmen having unpaid claims against a contractor to commence suit against the surety on his bond. What the legislative intent is, in passing certain laws, may sometimes not be definitely determined until conflicting facts, in litigation involving this intent, make judicial construction advisable or necessary. We may surmise that where a number of claims are involved it would be wise to permit, by affirmative authorization, a suit against the surety within said period, having in mind provisions found in

bonds which expressly provide that no suit may be brought against the surety until the expiration of ninety days, or longer, after an action on the bond accrues. Within the permissive provision to bring this action within ninety days, there also is the possibility of an interpretation that no suit can be brought against the surety until after the expiration of that period. We are persuaded that the clause in question is not a limitation of an action which may be brought upon a bond required under section 6, supra, but is a permissive authorization to sue the surety within the ninety-day period following the date fixed for final settlement. If it had been the legislative intent that the clause in question should be a time limitation fixing the period within which a suit on the bond must be brought, in our opinion it would have used language from which that intent would be reasonably clear. It did not do so, and therefore we hold that it had no such intention.

In view of this conclusion, we deem it unnecessary to consider other questions relating to this issue which are set out and discussed in the briefs.

■ With respect to the first ground referred to above, is there any merit to the affirmative defense of the surety, that plaintiff's failure to file its claim with the highway department within the time prescribed by section 7, to preserve its lien against the retained percentages in the hands of the highway department, released the surety from any liability under the bond? We think not. The filing of a claim is not mandatory under said section 7, as it is under similar laws of some other states. As already stated, the only penalty fixed by the statute for failure to file such a claim is to release the body awarding the contract from all liability. This is not a case in which complainant is seeking to reach an impounded fund, but is a suit on the bond of the surety, the obligations under which the contractor and the surety assumed pursuant to the requirement of section 6, chapter 39, supra. The failure to file the claim

by defendant in error did not discharge the surety from this liability. There is no provision in section 6 or 7 which permits such a construction.

The case of *School District v. Denver Pressed Brick Co.*, 91 Colo. 288, 14 P. (2d) 487, cited by counsel for the surety to sustain their contention, is not in point. That case did not involve a suit on a bond. The action was brought by a materialman against a school district seeking to make the latter liable for its failure to obtain a surety bond from the contractor for the protection of those furnishing material, as required by statute. Such failure, we there said, was a tort, for which the school district could not be held liable. We there further held that the indifference of the materialman in not first ascertaining this failure to obtain a bond was equivalent to negligence, which precluded recovery. The instant case being an action on a bond, and not on tort, the defense of negligence, under the facts before us, is not available.

The judgment is affirmed.

MR. JUSTICE BAKKE and MR. JUSTICE HILLIARD concur.

MR. CHIEF JUSTICE FRANCIS E. BOUCK not participating.