## AMERICAN FOUNDRY & MACHINE CO. v. UTAH LABOR RELATIONS BOARD, et al.

No. 6576.   Decided September 29, 1943.   (141 P. 2d 390.)

*W. W. Ritter*, of Salt Lake City, for plaintiff.

*Grover A. Giles*, Atty. Gen., and *Herbert F. Smart*, Deputy Atty. Gen., for defendant.

LARSON, Justice.

The Steel Workers Organizing Committee, an affiliate of the Congress of Industrial Organizations, filed written charges with the Utah Labor Relations Board, charging that the American Foundry and Machine Company was engaged in certain unfair labor practices affecting intrastate commerce in violation of certain provisions of the Utah Labor Relations Act. Laws 1937, c. 55. The Labor Relations Board issued a complaint thereon, hearing was had, and an order of the board was made, finding that the charges filed were substantially true, and ordering reinstatement of one employee, allegedly discharged for union activities, and the cessation of certain other designated labor practices. From such order, plaintiff brings certiorari for a review of the action of the board.

It appears that during the late winter and spring of 1942, C.I.O. organizers moved into the shops of the American Foundry and Machine Company in an effort to induce members of the A.F. of L. to join the C.I.O. During this time, several meetings between labor and management were held over various other matters, and the question of the C.I.O. organization activities came up at these meetings. At one of the meetings, John Aste, subsequently discharged, admitted in the presence of the vice president of plaintiff

that he had signed a pledge card for a C.I.O. union. It is alleged that at these meetings the management threatened to fire anyone they found to be distributing these cards, and securing signatures on them; and also that several of the employees were asked whether they had signed the cards, or whether they were distributing them. All but Aste denied any knowledge of the matter, or participation in it: In July of the same year, Aste and Taft, another worker in the same department, were fired by their foreman. The only explanation given at the time of firing was that their work was unsatisfactory, though upon the hearing, Mr. True, the foreman elaborated on that to some extent. It is now claimed that the firing of Aste was an unfair labor practice and was brought about because he had admitted signing the C.I.O. application card. No claim is made as to Taft, who was and still is an A.F. of L. man. At the time he was fired Aste was still the vice president of the local A.F. of L. union.

The labor board made four findings, any one of which would be sufficient to constitute an unfair labor practice under the Utah Labor Relations Act. The first two findings in substance set out that the plaintiff herein, interferred with, and restrained its employees' rights to form, join, or assist labor organizations of their own choosing. The second two findings in substance state that plaintiff discriminated in tenure of employment, and discharged employees in order to discourage membership in certain labor organizations.

The only question before this court is whether on the record as it now stands, these findings are supported by substantial evidence. It is not a question of weighing the evidence, and determining what decision we would have arrived at had we been members of the board. It is well established that if the award or finding is supported by substantial evidence, then it must be sustained by this court on review. Our own court has passed on this

question in *Building Service Employees* v. *Newhouse Realty Co. et al.*, 97 Utah 562, 95 P. 2d 507, 520, where it was said:

" 'We are bound by the Board's findings of fact as to matters within its jurisdiction, where the findings are supported by substantial evidence; but we are not bound by findings which are not so supported.' *Appalachian Elect. Power Co.* v. *N. L. R. B.*, 4 Cir., 93 F. 2d 985, 989; *Washington, V. & M. Coach Co.* v. *N. L. R. B.*, 301 U. S. 142, 57 S. Ct. 648, 81 L. Ed. 965; *Cupples Co. Mfrs.* v. *N. L. R. B.* (*Mutual Relations Ass'n*), 8 Cir., 106 F. 2d 100. Substantial evidence is evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences. *Pennsylvania Railroad Co.* v. *Chamberlain*, 288 U. S. 333, 339, 343, 53 S. Ct. 391, 77 L. Ed. 819; *Appalachian Elect. Power Co.* v. *N. L. R. B.*, 4 Cir., 93 F. 2d 985, 989."

As pointed out by this court in *Southeast Furniture Co.* v. *Industrial Comm.*, 100 Utah 154, 111 P. 2d 153,

"the Utah act * * * was copied after the Wagner Act, 29 U. S. C. A. § 151 et seq., enacted by the United States Congress. Sections 10(c) and 11(f) of the Utah act (Chap. 55, Laws of Utah 1937) read practically verbatim as do Secs. 9(c) and 10(f) of the United States act, 29 U. S. C. A. [§§] 159(c) and 160(f). We, therefore, consider the interpretation given by the federal courts to these sections, and others which are identical."

In *N. L. R. B.* v. *Grower-Shipper Vegetable Ass'n*, 9 Cir., 122 F. 2d 368, 375, the court said:

"Findings of the Board are conclusive only when supported by 'substantial evidence' which means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' [*Consolidated*] *Edison Co.* v. [*National*] *Labor* [*Relations*] *Bd.*, 305 U. S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126. Evidence, which is unsubstantial in a jury case in court, does not become substantial merely because it is before the Board, for the evidence required to support the Board's findings 'must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' [*National*] *Labor* [*Relations*] *Board* v. *Columbian* [*Enameling & Stamping*] *Co.*, 306 U. S. 292, 300, 59 S. Ct. 501, 505, 83 L. Ed. 660."

And in *N. L. R. B.* v. *Moore-Lowry F. M. Co.*, 10 Cir., 122 F. 2d 419, 422, the court said:

"The act commits to the Board the function of drawing inferences from established facts and circumstances, of appraising conflicting evidence, of determining the credibility of witnesses and the weight to be given to their testimony, and of resolving issues of fact. And it is settled beyond room for argument that courts are not at liberty to overturn findings of the Board if they are supported by substantial evidence." Citing cases.

There is testimony from several witnesses that Joseph Rosenblatt, vice president of plaintiff, stated at several of the meetings that he would find out who was responsible for the C.I.O. activity in the plant, and would then fire them. There is also testimony that one of the foremen by the name of Sorenson made the remark that if the witness would give him the names of men who had signed C.I.O. cards he would see that they were fired. The same witness stated that he gave two names to Sorenson, but that neither of the men were fired, one still being there when he, the witness, left the employment, and the other one having quit voluntarily to take another job.

This evidence is uncontradicted, and substantial, and what probative value this court believes it to have it not material, nor what conclusion the court would have reached from the evidence. *N. L. R. B.* v. *Nevada Consol. Copper Corp.*, 316 U. S. 105, 106, 62 S. Ct. 960, 961, 87 L. Ed. —; *N. L. R. B.* v. *Moore-Lowry F. M. Co.*, supra. It is sufficient, as there is some substantial evidence to support the board's findings, and therefore we affirm the first two findings of the board.

Evidence regarding the third and fourth findings of the Board is Aste's testimony as to his seven year service record, without complaints about his work, and his testimony regarding certain remarks made by Rosenblatt at a meeting several months before the discharge. The substance of this testimony is that if Rosenblatt found who was responsible for the C.I.O. organizing activity he would

"weed them out." There is also the fact that Aste had a C.I.O. card, though still a member in good standing, and an officer of the A.F. of L. union. The record is silent as to whether Aste actually was distributing C.I.O. affiliation cards, or was responsible for the organizing activity. There is also the testimony of Peterson, a worker in the same part of the plant as Aste. When asked whether Aste's work was satisfactory, he replied: "I will say it was." Powell, chairman of the grievance committee of the A.F. of L. local stated no complaint had been made to him about the work of Aste, though it does not appear whether it was customary for the management to make complaint of unsatisfacory work to the union grievance committee. There is also the testimony of one Thompson, who said that a night foreman, Sorenson, asked him if he was a member of the C.I.O. and said that he heard that Thompson had been passing out C.I.O. cards and collecting dues. When Thompson admitted that he had a C.I.O. card, but denied he was engaging in organizing activities, Sorenson said that "if Rosenblatt finds out about it, those holding C.I.O. cards will be fired." However, Thompson was still employed at the time of the hearing.

From the labor shortage which existed at the time of his discharge and Aste's seven-year service record, the Board drew an inference that there must have been more reason than mere unsatisfactory work for his discharge. The labor board may draw inferences from the evidence before it, and as said by the U. S. Supreme Court in *N. L. R. B.* v. *Nevada Consol. Copper Corp.,* supra,

"the possibility of drawing either of two inconsistent inferences from the evidence did not prevent the Board from drawing one of them * * *."

However, this does not abrogate the well settled law that the findings of the board must be supported by substantial evidence. Under the state of the record, we cannot find substantial evidence to support this inference. From the mere fact that Aste had worked seven years without com-

plaint, and the labor shortage at the time of his discharge, the inference that he was discharged for reasons other than poor work is not justified nor supported by the evidence. There is no showing that the type of work being done by the foundry was the same, and that might well make a great difference in the quality of work that the employer would be content to accept. In rough work the same high standard of high quality would not be required nor maintained as in precision work for the war effort.

The foregoing is a resume of all the evidence tending to show that Aste was discharged for union affiliation or activities. Since in review of cases from the Labor Relations Board, the court does not weigh the evidence, but merely determines whether the award is supported by any "substantial evidence," we need not set out evidence tending to show that Aste was discharged for cause. Such evidence does not justify the inferences and conclusions drawn by the Board. The record here falls far short of that indicated in *N. L. R. B.* v. *Link-Belt Co.*, 311 U. S. 584, 61 S. Ct. 358, 85 L. Ed. 368. The difference is apparent from a reading of that decision.

The order of the Labor Relations Board, as to Aste is vacated and annulled. The order of the Labor Relations Board as to American Foundry & Machine Company that it cease certain practices is affirmed.

WOLFE, Chief Justice (concurring).

I concur for the reasons set out in the opinions of Mr. Justice LARSON and Mr. Justice McDONOUGH.

McDONOUGH, Justice (concurring).

I concur, but I think the evidence showing that Aste was discharged for cause has efficacy in negativing the conclusion that he was discharged because of union activities. It is in view of the evidence set out in the opinion and the evidence tending to show that Aste was discharged for

cause that I conclude that the finding of the Board is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U. S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126, 140.

As far as the record discloses only three men were discharged at the plant during the period under investigation: Aste, Taft, and one Notti who was a witness on behalf of complainant. Notti and Taft were affiliated with the A.F. of L. union and no evidence was adduced to indicate that either had joined or had in any way supported the C.I.O. The Board found that neither one was discharged because of union affiliation. Any contrary finding would be contrary to the record.

As to the work of Taft who was discharged at the same time as Aste and for the same alleged cause, Taft testified that no complaint had been made of his work and that a month or so before he was discharged, the vice president of plaintiff, Mr. Rosenblatt, had complimented him and Peterson for the work they were doing and the amount they had turned out. Another witness testified to having heard the works manager state that Taft's foreman had reported to him at some time previous to his discharge that Taft's work was satisfactory. There is therefore as much, if not more, evidence of the acceptable quality of Taft's work as there is of Aste's.

Hence, of the three workmen allegedly discharged for cause, two had no union affiliation which could have been the real cause of the discharge; one had. However, the latter's work was no more satisfactory than at least one of those evidently discharged for cause. Furthermore, at least three workers who had affiliated with the C.I.O. union were known to the management or to a supervisory employee who was an official of the A.F. of L. local, to have so affiliated. None of the three were discharged.

One True, the foreman who discharged Aste and Taft, called as a witness by the company, testified in detail as

to the particulars in which the work of Aste and Taft was unsatisfactory. He stated that they "either would not or could not" clean the sand away from the castings in such way as to permit the torch men to make a sufficiently low cut; that the high cuts necessitated by such poor work on their part, made excessive grinding necessary which was very expensive. No torch man was called by either party or by the Board to refute or to coroborate this testimony Foreman True did not directly contradict the testimony of Aste and Taft that no complaint was made to them of their work. He was not questioned about it. His statement that they "could not or would not" do the work as desired would seem to imply that some effort was made to have them do work of a definite standard. Nor did Aste or Taft testify as to the manner in which they did the work which the foreman claimed was not satisfactory and not comparable to that done by other men on the same job.

In the light of the scant evidence relative to the satisfactory quality of Aste's work, and the specification by his foreman of the details in which it was unsatisfactory, the absence of any specific rebuttal of the latter's testimony, should be considered by the Board in determining the question as to the cause of his discharge. Especially is this true since the workmen who could have contradicted it were present at the hearing and others could have been summoned to testify.

MOFFAT, Justice (concurring specially).

I concur in the vacating of the order as to Aste and dissent as to the findings as to "certain practices."

All the direct evidence in the case is to the effect that Aste was discharged because of unsatisfactory work. That he was discharged for other reasons is based upon inferences from remarks alleged to have been made several months before the discharge occurred. There appears to be no reason why the employer would prefer to have em-

ployees affiliated with one labor organization rather than another.

There is no evidence that the manager or vice-president, Mr. Rosenblatt, directed the discharge of Aste or knew about it. Mr. True, the foreman, discharged him. When Mr. True was asked why he discharged Aste, he replied that Aste's work was not satisfactory. When pressed for particulars he replied that the job Mr. Aste had to do was what is called chipping or rough cleaning, consisting of taking the burned-in sand from around the heads, risers and crevasses in steel castings. This sand when not properly removed spoils tips and minute explosions in the flame and backfires the molten steel into the tip from the burner. It imposes expensive cuts and grinding.

True further said that Aste was either unable or unwilling to clean the steel castings so as to allow clean torch work comparable to the work done by others. The torch men whose work followed the work of Aste complained, and True was, from the complaints and his own observations that Aste "couldn't or wouldn't" perform as required, forced to discharge him. Mr. Rosenblatt positively states than no one had been discharged because he belonged to the C.I.O. nor for any activity connected therewith. Mr. Wright testified to the same effect.

No substantial basis is revealed from the record why the employer should prefer one labor organization over another. Both were entirely free from control or domination of the company. No charge is made as to any preference. Aste at the time of his discharge appears to have been an officer of the A.F. of L. and a member of the C.I.O. Surely, unsatisfactory service should be a ground for terminating an employment.

The only basis for the making of any findings or order was that the company had engaged in unfair labor practices as to Aste. When that basis goes out the whole decision falls for want of support.

WADE, Justice (concurring).

I concur. It is with much difficulty that I conclude that the record does not disclose sufficient evidence to justify the board's finding that Aste was discharged in order to discourage membership in the C.I.O. and not on account of unsatisfactory work. After a careful consideration of all of the evidence in the record, including that set out in the opinions of both Justice Larson and Justice McDonough, I have concluded that such a finding is unreasonable and not supported by the evidence.