No. 22472.

SOUTH-WAY CONSTRUCTION CO., INC., AND MEAD & MOUNT CONSTRUCTION COMPANY *v.* ADAMS CITY SERVICE, A PARTNERSHIP.

(458 P.2d 250)

Decided September 2, 1969.

GORSUCH, KIRGIS, CAMPBELL, WALKER & GROVER, JOHN L. FERGUSON, BRUCE DUCKER, for plaintiffs in error.

CLAYTON H. MORRISON, for defendant in error.
*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

THIS action was brought under C.R.S. 1963, 86-7-7, by a materialman, Adams City Service, to recover the cost of certain materials which it had supplied to Acme Sand and Gravel Co. for work on a public property. The Metropolitan Denver Sewage Disposal District had let the construction contract to Mead & Mount Construction Company, Inc., which subcontracted part of the work to South-Way Construction Co., Inc. In turn, South-Way Construction subcontracted part of its work to Acme Sand. Thus Adams City Service is the materialman to a sub-subcontractor. Summary judgment was entered against Acme Sand. After a trial, judgment was also entered against Mead & Mount and South-Way for nearly $10,000. The surety on the bond required by C.R.S. 1963, 86-7-4, *et seq.*, has never been a party to this action. The City of Denver, acting by and through the Metropolitan

Denver Sewage Disposal District, was made a party to the suit in the trial court and stipulated that it would pay out of funds withheld from the prime contractor in accordance with any final judgment rendered here.

Mead & Mount and South-Way contend here (a) that C.R.S. 1963, 86-7-7, whose terms extend protection to those who supply materials "used or consumed by such contractor, or his subcontractor," does not authorize an action brought by one who supplies materials to a sub-subcontractor; (b) that the remedy provided by the statute must be employed against the surety on the bond which the contractor is required to execute, and not against the contractor; and (c) that the judgment is not supported by the evidence.

I.

■ Under the terms of our statute, any person who has furnished labor or materials "used or consumed by such contractor, or his subcontractor, in or about the performance of the work contracted to be done," may file with the public agency awarding the contract a verified statement of the amount unpaid. C.R.S. 1963, 86-7-7(1). Upon the filing of this claim, the public agency must withhold from all payments to the contractor sufficient funds to insure the payment of the claim. C.R.S. 1963, 86-7-7(2). The contractor and subcontractor contend here, however, that the statute does not include within its scope of protection a person who has supplied materials to a sub-subcontractor. We do not agree.

■ To construe the term "subcontractor" so as to exclude a "sub-subcontractor" from the protection granted by the contractor's bond statute would require us to ignore the purpose of the statute. Since the benefits of our mechanic's lien act do not apply to projects constructed by governmental agencies, a remedy similar to our mechanic's lien statute was provided by the legislature for the protection of those furnishing supplies or material for such projects. *Continental Casualty Co. v. Rio Grande Fuel Co.*, 108 Colo. 472, 119 P.2d 618. See

also *Western Lumber & Pole Co. v. City of Golden,* 23 Colo. App. 461, 130 P. 1027. The statute stands in lieu of the mechanic's lien statute, and is designed to protect those who supply labor and materials for public works. *Flaugh v. Empire Clay Products, Inc.,* 157 Colo. 409, 402 P.2d 932.

Plaintiff in error contends that *Stryker v. Toliver & Kinney Mercantile Co.,* 77 Colo. 347, 236 P. 993, requires us to adopt the construction which the United States courts have placed upon the Miller Act, 40 U.S.C. § 270a, *et seq.,* which is the federal contractor's bond statute. We do not agree. In *Stryker, supra,* our Court gave "great force" to earlier federal and state decisions construing an earlier federal contractor's bond statute, pointing out that there was no distinction between the language of the federal statute and that of the state statute as to the particular point in issue. *Stryker, supra,* it is to be noted, adopted a more liberal interpretation than was afforded by the mechanic's lien statute with respect to what items of supply were protected by the statute.

After *Stryker* was decided, however, the protection available under the federal contractor's bond law was substantially changed by the enactment of the Miller Act, 40 U.S.C. § 270a, *et seq.,* (1935). See *MacEvoy Co. v. United States ex rel. Calvin Tompkins Co.,* 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163. The Miller Act contained a proviso (without counterpart in the former federal statute), which made it clear that the right to bring an action on the bond was limited to those materialmen who had a direct contractual relationship with a subcontractor. A House of Representative Report stated, moreover, that "[a] sub-subcontractor may avail himself of the protection given in the bond in giving written notice to the contractor, but this is as far as the bill goes. It is not felt that more remote relationships ought to come within the purview of the bond." It was upon this "expressed will of the framers of the Act" that the United States Supreme Court held that the Miller Act

was extremely limited in its application to materialmen. *MacEvoy Co. v. United States ex rel. Calvin Tompkins Co.*, 322 U.S. 102, 108. The expressed will of Congress in 1935, dealing with a revision of its statutes, certainly can have no effect on the interpretation of our statute which has been in existence in its present form since at least 1923. We decline to depart from the rule of liberal construction which we applied in *Stryker, supra,* and which we have enunciated several times since then. We hold that a materialman to a sub-subcontractor is within the scope of protection granted by our statutes, just as he would be protected under the mechanic's lien statute.

## II.

■■ Plaintiffs in error contend that the only remedy provided under C.R.S. 1963, 86-7-7 is an action against the surety on the bond required in Section 86-7-6. We do not agree. In our view, C.R.S. 1963, 86-7-7, provides alternate methods of relief. The statute specifically requires the governmental agency to withhold sufficient funds to insure payment of claims by materialmen provided proper and timely notice is given. An action must be begun to *enforce the unpaid claims* within ninety days of the time of final settlement and lis pendens filed within that ninety-day period with the contracting body. If such procedure is followed, the contracting body must retain such funds to insure *the payment of judgments which may result from the suit.* In our view, this permits suit against the contractor to enforce the unpaid claim with the governmental body acting as stakeholder until the final outcome.

■ The remedy granted in the last sentence of 86-7-7(3) we view as an additional remedy which permits suit against the surety on the bond required by 86-7-6, but which has nothing to do with the security fund created by the provisions of 86-7-7(1) and (2). If the only suit permitted were that upon the bond, the elaborate provisions for setting up withheld funds as security for any judgments would be useless.

Here the City of Denver, acting by and through the Metropolitan Sewage Disposal District, which was the contracting body, withheld funds sufficient to pay any judgment obtained and was made a party. The parties, including the contracting body, stipulated that the withheld funds were to be paid out in accordance with our disposition of the case. All against whom judgments were obtained were afforded due process. The surety company which wrote the bond to the contracting agency under 86-7-6 was not required to be made a party since it had no contingent liability on the claim in suit. This is so because the contracting body had enough withheld funds to pay the claim sued upon.

III.

Mead & Mount and South-Way also contend generally that the judgment is not supported by the evidence. In part, they point out that neither the general contract let by the Metropolitan Denver Sewage Disposal District nor the subcontract to South-Way were introduced as evidence at trial, and contend that therefore the materialman could not have shown that the materials supplied were in fact required for use on the public project. We need only point out here that the sub-subcontract was received in evidence, and that several persons testified generally as to the nature of the work required to be performed. The trial court found further that Mead & Mount was the general contractor for the building of a sewage disposal plant. Without further discussion, we also dismiss as having no merit the contention that all of the evidence was too speculative to support a judgment.

But we do agree with the contention that the trial court employed the wrong test to determine the extent of the materialman's claim. The claimant may recover only for such work and materials as were specifically necessary for the doing of what the contractor had to do in the construction of the public work. See *Stryker v. Toliver & Kinney Mercantile Co., supra.*

The judgment is reversed and the cause remanded to the trial court for a new trial on the issue of damages only, in accordance with the views herein expressed.

MR. JUSTICE DAY and MR. JUSTICE HODGES not participating.