615 P.2d 68 (1980)
ROCKY MOUNTAIN ASSOCIATION OF CREDIT MANAGEMENT, Assignee, Plaintiff,
Colorado Doorways, a Division of Transit Mix Concrete, Modern Fixture Company, and Royal Custom Wood Crafts, Inc., a Colorado Corporation, Plaintiffs-Appellants,
v.
T. Holman MARSHALL, d/b/a H. T. Marshall Builders, Defendant, and
Central National Insurance Company of Omaha, Defendant-Appellee.
No. 79CA1110.
Colorado Court of Appeals, Div. I.
July 10, 1980.
*69 Gorsuch, Kirgis, Campbell, Walker & Grover, David M. Powell, Denver, for plaintiffs-appellants Modern Fixture Company and Colorado Doorways.
George L. Zoellner, Aurora, for plaintiff-appellant Royal Custom Wood Crafts, Inc.
Zarlengo, Mott & Zarlengo, Donald E. Cordova, Denver, for defendant-appellee.
KIRSHBAUM, Judge.
Plaintiffs Modern Fixture Company, Royal Custom Wood Crafts, Inc. and Colorado Doorways appeal from a judgment of the trial court entered in three consolidated actions denying their claims against defendant Central National Insurance Company of Omaha (Central) for labor and materials supplied on a public works construction project. We reverse.
In October of 1975, the City and County of Denver awarded general contractor H. T. Marshall a contract for construction of courtrooms in the Denver City and County Building. Central is the surety on Marshall's performance bond. The parties have stipulated that the project was substantially completed as of April 19, 1976; that the date fixed for final settlement of claims, as published, was December 10, 1976; and that plaintiffs' civil actions were commenced more than six months after April 19, 1976, but within 90 days of December 10, 1976.
Plaintiffs' complaints sought damages pursuant to § 38-26-107(3), C.R.S. 1973, on the basis of verified claims for materials and labor which had been filed prior to December 10, 1976, with the municipality. The trial court concluded that the six-month limitations provision of § 38-26-105, C.R.S.1973 barred the actions. Plaintiffs contend that the provisions of § 38-26-107(3) control their claims. We agree with that contention.
*70 Sections 38-26-101 to 107, C.R.S.1973, establish various obligations, rights and remedies for contractors and others employed on public works projects. Section 105, initially adopted in 1915, requires a contractor awarded a public works contract to obtain a payment bond conditioned upon prompt payment of sums due to those who supply labor or materials used in the project. The bond must provide that the contractor and the surety will indemnify and hold harmless the public entity awarding the contract for any payments such entity might be required to make in carrying out the contract. In the event of non-payment for goods or services supplied in the course of a public works construction project, § 105 expressly permits the supplier to file a civil action against the contractor, the surety, or both, provided that such action is filed within six months of the date the project is completed.
Section 106, initially adopted in 1923, requires a public works contractor to obtain an additional bond  a performance bond conditioned upon the contractor's faithful performance of the base contract. The surety on a performance bond is liable expressly for amounts due suppliers of labor or materials used during performance of the contract, together with interest thereon. A claimant may elect to file a civil action under § 106 against the contractor, the surety, or both. Fountain Sand & Gravel Co. v. Chilton Construction Co., 40 Colo. App. 363, 578 P.2d 664 (1978).
While the six-month limitations provision of § 105 is applicable to actions on a performance bond, General Electric v. Webco Construction Co., 164 Colo. 232, 43 P.2d 760 (1967), § 107(3), here under consideration, contains no bonding provisions and establishes a new remedy for suppliers. See South-Way Construction Co. v. Adams City Service, 169 Colo. 513, 458 P.2d 250 (1969). Initially adopted in 1923, it permits claimants to file verified claims with the public entity which awarded the contract, and requires such entity, upon receipt of a verified claim, to withhold payment of funds to the contractor in sufficient amount to insure payment of such claim. The claim must be filed no later than the final settlement date.
Section 107(3) expressly authorizes a claimant to commence a civil action for payment of unpaid claims against the surety on the contractor's performance bond at any time within 90 days following the final settlement date. Significantly, § 107 contains no requirement that the date for final settlement must be within a six-month period subsequent to the completion of the work. The final settlement date, whenever it might occur, is the critical date for purposes of § 107(3).
To the extent that §§ 105 and 107(3) are irreconcilable, § 107(3) adopted subsequently to § 105 and containing specific time requirements, must control the issues here presented. Section 2-4-206, C.R. S.1973. We therefore hold that § 38-26-107(3), C.R.S.1973 permits qualified claimants, within 90 days of the date for final settlement of claims regardless of the date of completion, to file actions against sureties who have posted performance bonds pursuant to § 38-26-106, C.R.S.1973. Such construction gives maximum effect to the express provisions of § 107(3) and furthers the General Assembly's intent in 1923 to provide a new remedy for those who supply services and materials on public works contracts.
Judgment reversed and cause remanded for further proceedings consistent with this opinion.
COYTE and VAN CISE, JJ., concur.