CPS DISTRIBUTORS, INC., Plaintiff-Appellant,

v.

FEDERAL INSURANCE COMPANY, Defendant-Appellee.

No. 83CA1093.

Colorado Court of Appeals, Div. IV.

May 17, 1984.

Rehearing Denied June 14, 1984.

Richard N. Graham, P.C., Richard N. Graham, Englewood, for plaintiff-appellant.

Philip E. Lowery, P.C., Philip E. Lowery, Scot W. Nolte, Denver, for defendant-appellee.

SILVERSTEIN *, Judge.

Plaintiff, C.P.S. Distributors, Inc. (CPS), appeals a judgment which determined that defendant, Federal Insurance Company (Federal), was not liable to plaintiff under the terms of a payment and performance bond issued by defendant. We affirm.

The following facts are undisputed. The City of Greeley, Colorado, executed a contract with M.J. Bober Company to construct a sewer line for the City. Pursuant to statute, Bober furnished a payment and performance bond in which Bober was the principal and the City was the obligee. CPS furnished pumps to Bober for use on the job, some of which were sold to Bober and some rented.

Not having been paid in full for the pumps, CPS timely filed a claim with the City pursuant to § 38–26–107, C.R.S. (1982 Repl.Vol. 16A), and thereafter, timely filed the within action naming the City, Bober, and Federal as defendants. Bober then filed a bankruptcy petition, and the proceedings as against Bober were stayed pur-

suant to an order from the bankruptcy court.

Trial was to the court. The court determined that Bober owed CPS the amount claimed, $11,471.69. However, because of the stay order, judgment was not entered against Bober.

## I.

At the beginning of the trial the attorney for the City admitted that CPS had complied with the provisions of § 38–26–107, C.R.S. (1982 Repl.Vol. 16A) and that, pursuant to that statute, the City had withheld funds sufficient to pay the claim in the event judgment entered in favor of CPS against Bober. The City attorney stated further that, because Bober claimed that all the retained funds should be turned over to the trustee in bankruptcy, the funds would not be released until permission to do so was granted by the bankruptcy court. The City then moved that it be dismissed from the action. The trial court granted the motion over the objection of CPS. There is no appeal from that order.

## II.

The bond issued by Federal was labeled "Payment and Performance Bond" and provided that, in the event of default, Federal "shall pay all persons who have contracts directly with the principal, for labor and materials, if any, included in the contract . . . ."

Federal asserts that the pumps were equipment, not materials, and as such were not covered by the bond. The trial court so found, stating:

"Equipment and materials are terms which are not interchangeable. The word 'materials' is generally used to describe items actually used in the structure which become a part of it. *See Farmers' Irrigation Company v. Kamm*, 55 Colo. 440, 135 P. 766 (1913). 'Equipment' generally includes the tools,

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* Art. VI, Sec. 5(3),

and § 24–51–607(5), C.R.S. (1982 Repl.Vol. 10).

machinery or appliances which are used to facilitate the work but which are not incorporated into the structure. *City of Barre v. New Hampshire Insurance Company,* 136 Vt. 484, 396 A.2d 121 (1978)."

A strict construction of the present bond warrants such a conclusion.

■ CPS contends, however, that in construing the bond, the terms of the statutes pursuant to which it was written control. We agree. In *General Insurance Co. v. Colorado Springs,* 638 P.2d 752 (Colo. 1982), the court stated:

"Given the existence of a specific legislative requirement for a bond, it is not unreasonable to assume that the principal purchased the bond and the surety issued it in order to accomplish the objectives outlined by the lawmaking body in requiring this form of security as a condition of performance." *See Marquez v. Prudential Property & Casualty Insurance Co.,* 620 P.2d 29 (Colo.1980).

Thus, we must look to the statutes to determine the extent of the obligation of a surety on a public works bond.

■ Section 38–26–105, C.R.S. (1982 Repl.Vol. 16A) provides that a public works contractor shall furnish a bond assuring prompt payment "of all amounts lawfully due to all persons supplying or furnishing [the contractor] or his subcontractor with labor or materials used or performed in the prosecution of the work provided for in such contract . . . ." This is classified as a payment bond. Section 38–26–106, C.R.S. (1982 Repl.Vol. 16A) provides that the contractor shall furnish a bond assuring faithful performance of the contract, and that the bond also:

"[S]hall provide that if the contractor fails to duly pay for any labor, materials, team hire . . . or other supplies used or consumed by such contractor or his subcontractor in performance of the work contracted to be done, the surety will pay the same . . . ."

The contractor is required to meet both of these statutory bonding requirements.

*Rocky Mountain Ass'n of Credit Management v. Marshall,* 44 Colo.App. 467, 615 P.2d 68 (Colo.App.1980). As was done here, both bonds may be consolidated into one payment and performance bond document.

■ These statutes are to be liberally construed. *South-Way Construction Co. v. Adams City Service,* 169 Colo. 513, 458 P.2d 250 (1969). CPS argues that, under a liberal construction, equipment such as the pumps involved here, whether bought or leased by the contractor, constitute "supplies used by the contractor" in performance of the work contracted to be done. We do not agree.

In *Union Indemnity Co. v. Pennsylvania Boiler Works,* 246 Ky. 473, 55 S.W.2d 367 (1932), the court, after stating that the tendency of modern decisions is toward liberal construction, held:

"But the decisions are squarely against the allowance of claims for such purchases by the contractor as constitute his tools, equipment, or plant, which are things of a permanent nature that are not consumed in constructing the improvement, but which may be used on many contracts."

*Accord United States Fidelity & Guaranty Co. v. California-Arizona Construction Co.,* 21 Ariz. 172, 186 P. 502 (1920); *United States Rubber Co. v. Washington Engineering Co.,* 86 Wash. 180, 149 P. 706 (1915).

Neither of the Colorado public works bond statutes would warrant a different construction. We hold, therefore, that the purchase of the pumps was not an expense that was covered by the bond.

### III.

■ There appears to be a split of authority as to whether the cost of renting equipment would constitute "supplies used or consumed" in performance of the work. In most jurisdictions, such expenses are not covered by either a payment or a performance bond. In *Troy Public Works Co. v. City of Yonkers,* 129 N.Y.S. 920, 145 App. Div. 527 (1911), rental of a steam shovel

was at issue. The court held, "It matters not whether the contractor bought the shovel or simply hired it; it was in either case a part of the plant of the contractor ...." *Accord Interstate Equipment Co. v. Smith,* 31 N.C.App. 351, 229 S.E.2d 241 (1976); *City of Lancaster v. George,* 315 Pa. 232, 172 A. 686 (1934).

Further, in *United States Rubber Co. v. Washington Engineering Co., supra,* the court held that "supplies" referred to items "used up" in the work, not to equipment. In construing bonds and their governing statutes, generally a distinction is made between items which are consumed in the work and those which are not and thus can be used on other jobs. *United States Fidelity & Guaranty Co. v. Feenaughty Machinery Co.,* 197 Wash. 569, 85 P.2d 1085 (1939); *United States Fidelity & Guaranty Co. v. Ed Hockaday & Co.,* 182 Okla. 73, 76 P.2d 911 (1938). A similar distinction was enunciated in *Farmers' Irrigation Co. v. Kamm, supra,* wherein the court held that items, including materials furnished as an aid to the contractor in the performance of his work, and which are not intended to go into the structure, but are to be taken away when the work is completed, are in the same category as equipment, and are not covered by the mechanics' lien statutes.

Those cases which hold that the cost of renting equipment is covered by a public works bond generally fall into one of three categories: (1) Where the statute expressly so provides, *John A. Artukovich Sons, Inc. v. American Fidelity Fire Insurance Co.,* 72 Cal.App. 940, 140 Cal.Rptr. 434 (1977); (2) where the bond itself so provides, *Carpenter v. Seaboard Engineering Co.,* 158 Me. 277, 183 A.2d 216 (1977); or (3) where the article rented was not part of regular equipment, but was rented for a special use on the one job, *Nicks v. W.C. Baird & Co.,* 165 Tenn. 89, 52 S.W.2d 147 (1932).

We conclude that equipment, whether purchased or rented, is not covered by the public works bond statutes. Also, it is evident here that, since some of the pumps were purchased, the rented pumps were not rented for a special use. Thus, neither the cost of renting nor of purchasing the pumps was covered by the subject bond.

Judgment affirmed.

ENOCH, C.J., and HODGES, Justice[*], concur.