**WESTERN COATING, INC., and
Oregon corporation, Plaintiff
and Appellant,**

v.

**GIBBONS & REED COMPANY, a Utah
corporation, et al., Defendants
and Appellees.**

No. 880289.

Supreme Court of Utah.

Feb. 15, 1990.

Robert F. Babcock and Mary Louise Lecheminant, Salt Lake City, for plaintiff and appellant.

Bryce E. Roe, Salt Lake City, for defendants and appellees.

HOWE, Associate Chief Justice:

Plaintiff Western Coating, Inc., a third-tier supplier in a public contract, appeals from a summary judgment in favor of the general contractor, Gibbons and Reed Company, in this suit to determine the coverage of a payment bond.

The Utah Department of Transportation contracted with defendant Gibbons and Reed Company to construct a public road. Gibbons and Reed obtained a payment bond from its surety, American Insurance Company, in accordance with Utah Code Ann. § 63–56–38 (Supp.1985). Gibbons and Reed subcontracted with Pacheco & Martinez for the installation of black and epoxy reinforcing steel on the project. Pacheco & Martinez then entered into a contract with Continental–Hagen to supply the black and epoxy reinforcing steel. Continental–Hagen in turn contracted with plaintiff Western Coating for epoxy coated rebar to be used in the project.

Gibbons and Reed paid Pacheco & Martinez, but Western Coating was not paid by Continental–Hagen. Western Coating made a demand upon Gibbons and Reed and its surety under the payment bond for the $30,904.80 balance due on materials. The district court granted a motion for summary judgment by Gibbons and Reed. In its memorandum decision, the court relied on federal interpretation of the Miller Act, 40 U.S.C. § 270b (1935), in holding that Western Coating was too remote in the contract chain to recover under the Utah Procurement Code's payment bond provision, section 63–56–38. The sole issue on appeal is whether third-tier suppliers are covered by the Utah Procurement Code.

Western Coating contends that the Utah Procurement Code and Utah's mechanic's lien statutes, Utah Code Ann. §§ 38–1–1 to –26 (1988), are similar in purpose; therefore, the coverage of the mechanic's lien, which extends to third-tier suppliers in private contracts should be imputed to the Utah Procurement Code. Western Coating argues that this would further public policy by extending to public contract suppliers the same security they enjoy in private contracts.

This Court has recognized that public bonding and mechanic's lien statutes are "closely related in purpose." *King Bros., Inc. v. Utah Dry Kiln Co.*, 13 Utah 2d 339, 341, 374 P.2d 254, 255 (1962). We have

reasoned that since mechanic's lien protection is not available in public contracts, "performance bonds are required on public projects to provide substitute protection for laborers and material providers." *CECO v. Concrete Specialists, Inc.*, 772 P.2d 967, 970 (Utah 1989).

However similar in purpose, the language of the pertinent mechanic's lien statute and that of the Utah Procurement Code evidence that the two statutes were not intended to be co-extensive. Section 38–1–3 (1988) provides that those entitled to a mechanic's lien are "[c]ontractors, subcontractors, and *all persons performing any services or furnishing* or renting *any materials* or equipment *used in the construction,* alteration, or improvement of any building or structure...." (Emphasis added.)

In contrast, the pertinent section of the Utah Procurement Code provides:

(1) When a construction contract is awarded, the following bonds or security shall be delivered to the state and shall become binding on the parties upon the execution of the contract:

. . . .

(b) a payment bond satisfactory to the state, in an amount equal to 100% of the price specified in the contract, executed by a surety company authorized to do business in this state or any other form satisfactory to the state, for the protection of *all persons supplying labor and material to the contractor or its subcontractors for the performance of the work provided for in the contract.*

. . . .

(3) *Any person who has furnished labor or material to the contractor or subcontractor for the work provided in the contract,* in respect of which a payment bond is furnished under this section, who has not been paid in full within 90 days from the date on which the last of the ·labor was performed or material was supplied by the person for whom the claim is made, may sue on the payment bond.... [1]

Utah Code Ann. § 63–56–38 (Supp.1985) (emphasis added).

We recently decided whether the rental of equipment, expressly mentioned in the mechanic's lien statute but not in section 63–56–38, was covered by the latter section in view of its common purpose with the mechanic's lien. In *Johnson v. Gallegos Construction Company*, 785 P.2d 1109, 1111–12 (1990), we noted that the absence of language covering rental of equipment manifested an intent by the legislature not to include such rental. We were unwilling to extend mechanic's lien coverage to the procurement code on the basis of a "common purpose" theory.

The mechanic's lien covers all persons performing services or furnishing material used in the construction of a building or structure. Section 63–56–38 coverage is narrower: any person who has supplied labor or material to the contractor or its subcontractors for the work provided for in the contract. Since the coverage is stated differently, we must look to the legislative history of the Utah Procurement Code to ascertain the scope of its coverage.

Congress passed the Miller Act in 1935 to provide protection in public contracts for

[e]very person who has furnished labor or material in the prosecution of the work provided for in such contract[s].... *Provided, however,* [t]hat any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond....

40 U.S.C. § 270b (1982) (emphasis in original).

In 1944, the United States Supreme Court held that subcontractors in a relationship more remote than sub-subcontractor were not covered under the Miller Act. *Clifford F. MacEvoy Co. v. United States*, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163 (1944). While the act provided that coverage extended to "every person who has

---

1. Amended by 1989 Utah Laws chapter 271 to protect "all persons supplying labor, service, equipment, or material for the performance of the work provided for in the contract."

furnished labor or material," the Court stated that it could not "disregard the limitations on liability which Congress intended to impose and did impose in the proviso of § 2(a) [now § 270b]." 322 U.S. at 107, 64 S.Ct. at 893–94, 88 L.Ed. at 1167. Years later, Justice Oaks of this Court explained the *MacEvoy* Court's policy reason for restricting coverage based on the terms of the contractual relation between the prime contractor and the supplier:

> [It] is to place workable limits on the favored classification of subcontractors. Otherwise, the status of subcontractor could theoretically extend down the chain of commercial contacts to hundreds of suppliers who had some supply or service function furthering the prime contract but in a relationship so remote that it would be unworkable and unfair to give them the benefit of bond or insurance contracts meant to benefit the prime contractor and those most immediate to it and to the performance of its function.

*Jacobsen Constr. Co. v. Industrial Indem. Co.,* 657 P.2d 1325, 1331–32 (Utah 1983) (Oaks, J., concurring specially).

Nineteen years after *MacEvoy,* the Utah legislature enacted a public contractors' bond act codified at Utah Code Ann. §§ 14–1–5 to –8 (Supp.1963). Section 14–1–5(2) essentially followed section 270a(a)(2) of the Miller Act, but changed the Miller Act's general coverage terms—"all persons supplying labor and material in the prosecution of the work provided for in said contract ..."—to accord with the *MacEvoy* decision that the specific terms of the proviso prevailed over the Act's general terms. *See, MacEvoy,* 322 U.S. at 107, 64 S.Ct. at 894, 88 L.Ed. at 1167. The payment bond in section 14–1–5(2) covered "persons supplying labor or materials to the contractor or his subcontractors...." The legislature adopted the proviso language of section 270b of the Miller Act almost verbatim in section 14–1–6, and the act was referred to as the "Little Miller Act." *Utah Legislative Survey,* 1984 Utah L.Rev. 115, 127, n. 79; *Cox Rock Prod. v. Walker Pipeline Constr.,* 754 P.2d 672, 674 (Utah Ct.App. 1988). This Court interpreted the notice provisions of section 14–1–6 in a 1970 case

and "subscribe[d] to the principles and cases" cited in a federal case involving "the similar Miller Act." *A.A. Maycock, Inc. v. General Ins. Co. of America,* 24 Utah 2d 369, 371–72, 472 P.2d 424, 426 (1970).

In 1979, in an effort to simplify, clarify, and modernize the law governing all aspects of state procurement, Utah became one of five states which agreed to adopt a version of the A.B.A. Model Procurement Code. Between April 1979 and November 1979, the Utah Model Procurement Code Working Committee met to adapt the A.B.A. Model Procurement Code to the needs of this state. Remarks by Sen. Moroni Jensen, chairman of the working committee, on S. 71, 43rd Utah Leg., Budget Sess. (Feb. 1, 1980) (S. Recording Disc 98, side 1); remarks by Marthe Dyner, working committee member, on S. 71, 43rd Utah Leg., Budget Sess. (Jan. 29, 1980) (H. Recording Disc 3, side 1). Section 5–302 of the A.B.A. Model Code is the section after which the statute in question here, section 63–56–38, is modeled. Model Code section 5–302 states in the commentary: "The provision of the Section with respect to suits on payment bonds essentially follows the Miller Act, 40 U.S.C. § 270 (1970), and many similar State statutes."

When the Little Miller Act was repealed in 1980, a near verbatim version of A.B.A. Model Code section 5–302 was enacted as Utah Code Ann. § 63–56–38 (Supp.1980). The influence of the *MacEvoy* interpretation of the Miller Act is reflected in the limiting language, twice stated in the new statute, that the payment bond is "for the protection of all persons supplying labor and material *to the contractor or its subcontractors.*" § 63–56–38(1)(b) (Supp. 1980) (emphasis added). Compare this language and similar language in section 63–56–38(3) (Supp.1980) with Utah Code Ann. § 14–1–5(2) (1973) (no amendments since 1963 enactment) (covering "persons supplying labor or materials to the contractor or his subcontractors ..."). *See* 1963 Utah Laws ch. 15.

■ This Court has previously adopted federal interpretations for sections of the

Utah Code which are identical to or copied after federal acts. *American Foundry & Machine Co. v. Utah Labor Relations Bd.*, 105 Utah 83, 86, 141 P.2d 390, 391 (1943); *Southeast Furniture Co. v. Industrial Comm'n*, 100 Utah 154, 156, 111 P.2d 153, 154 (1941); *see also Jensen v. Intermountain Health Care, Inc.*, 679 P.2d 903, 904 (Utah 1984) ("We recognize that when the Legislature adopts a statute from another state, the presumption is that the Legislature is familiar with that state's judicial interpretations of that statute and intends to adopt them also."). When the legislature repealed the Little Miller Act in 1980 and replaced it with the Utah Procurement Code, the federal judicial interpretation of the Miller Act had been in place for 37 years. The legislature had the opportunity to affirmatively indicate that remote tier suppliers were covered by the Utah Procurement Code. Instead, it chose language which seems to codify the *MacEvoy* decision to limit public bond coverage to contractors, their subcontractors, and the next tier of suppliers. We therefore conclude that the intent of the legislature was to exclude remote tier suppliers such as Western Coating.

Western Coating argues that federal case law is not dispositive of this case and cites cases from Colorado, Massachusetts, and New Mexico in which language similar to that used in Utah's statute has been construed to include remote tier suppliers. Each of these cases is distinguishable.

In *South–Way Construction Company v. Adams City Service*, the Colorado Supreme Court interpreted a state statute which pre-dated the Miller Act and the federal decisions interpreting it. The court stated: "The expressed will of Congress of 1935, dealing with a revision of its statutes, certainly can have no effect on the interpretation of our statute which has been in existence in its present form since at least 1923." 169 Colo. 513, 518, 458 P.2d 250, 252 (1969). Our statute post-dates the Miller Act, and our legislature had the benefit of the judicial interpretations of that Act.

In *Peters v. Hartford Accident and Indemnity Company*, the Massachusetts Su-

preme Court relied upon a 1908 case which construed public bonding statutes as giving "security equivalent to" mechanic's liens. The court also relied upon a definition of "subcontractor" in a 1910 case that "encompassed sub-subcontractors." 377 Mass. 863, 866, 867 n. 9, 389 N.E.2d 63, 65 n. 9 (1979). Utah has no similar case law.

In *State ex rel. W.M. Carroll & Company v. K.L. House Construction Co.*, the New Mexico Supreme Court relied on statutory language "stat[ing] that the performance bond is intended to satisfy '*all* just claims for ... materials and supplies furnished ... whether ... said materials and supplies be furnished, under the original contract or under *any* subcontract.'" 99 N.M. 186, 187, 656 P.2d 236, 237 (1982) (emphasis is the court's). We have no such expansive language in our statute.

Summary judgment is affirmed.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.