472 P.2d 424

**A. A. MAYCOCK, INC., Plaintiff and Appellant,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, E. W. Hartmann and Skyline Construction Company, Defendants and Respondents.**

**GENERAL INSURANCE COMPANY OF AMERICA and Skyline Construction Company, Cross-Claimants and Third-Party Plaintiffs,**

v.

**E. W. HARTMANN, Cross-Defendant,**

and

**William G. Hartmann, Third-Party Defendant.**

No. 11986.

Supreme Court of Utah.

July 8, 1970.

Roe, Jones, Fowler, Jerman & Dart, Bryce E. Roe, Robert B. Hansen, Salt Lake City, for plaintiff and appellant.

Worsley, Snow & Christensen, Joseph J. Palmer, Salt Lake City, for defendants and respondents.

HENRIOD, Justice.

Appeal from a summary judgment of no cause of action in a case involving Title 14–1–6, Utah Code Annotated 1953, having to do with materialmen and laborers in connection with public construction projects, where performance bonds are required. Affirmed with costs to defendants.

The litigants, though paraphrasing the facts differently in their briefs, do not ap-

pear to disagree with the accuracy or pertinency of each's recital.

Skyline was the prime contractor on a school job. It furnished a performance bond executed by General Insurance Co. pursuant to the statute. Its contract, among other things, called for a Rite Engineering Co. boiler, which it contracted to obtain from Hartmann, subcontractor, who in turn ordered it from the plaintiff Maycock, sub-subcontractor, who is the appellant here. The latter ordered the boiler from Rite, who by mistake sent it to a Texas outlet, sending the one meant for Texas to the Utah job. It arrived in March, 1966, was installed in or about *June, 1966.* The boiler and everything physically connected with it had been billed to Hartmann on May 9, 1966. The error was not detected until the following October. Maycock strictly was a materialman, with no obligation to install the boiler, that being Hartmann's obligation. After discovery of the error it was decided that the boiler could be used by installing new and different controls. Such controls, apparently because of the wrong delivery, were furnished free of charge by Rite, and were installed in October and allegedly up to November 7, 1966, by a Servco Co., not Maycock or Rite. The charge was paid by Rite who had made the error. There was no billing or statement rendered for additional parts, and all invoices sent were for the same amount, $13,504.94. Such de-

mands consistently were made on Hartmann in June, July, August, September and October. This demand for the identical amount, $13,504.94, was made by plaintiff in a letter *directly to Skyline*, the prime contractor, on *November 17, 1966,* after Hartmann had defaulted in its payment to plaintiff, detailing its claim, and saying "the tabulation below indicates equipment furnished including shipping dates, and invoice prices on mechanical equipment furnished on subject job." The last shipping date was stated as being in June, 1966, and no claim was made for materials furnished thereafter. The defendants refused to pay the claim made on November 17, 1966, for the reason that it was not made in accordance with the statute within 90 days after the last material was furnished. Plaintiff, nearly a year later, on October 2, 1967, instituted this action to recover from Hartmann, Skyline and General Insurance Co.

Maycock contends that the last materials called for under the prime contract were furnished in October, and that the 90 days within which a claim and notice thereof must be made and given in order to recover on the performance bond or from the prime contractor, was given in November, well within the statutory provision, and that suit was filed within the statutory one year. Defendants and the trial court think otherwise and so do we.

Maycock contends that the replaced controls were nothing more nor less than a de-

livery of materials called for under the contract. This is not so. It was a replacement of materials that Maycock, *through its own mistake and that of its vendor,* erroneously delivered in breach of its own contract. It would seem to be a novel principle that would permit one to employ his own error and breach to gain an extension of time to recover under a statute that otherwise would have barred him had he kept his covenants. This circumstance in and of itself seems to be dispositive here.

In addition, however, the facts just do not justify the enforcement of this claim, —purely statutory in nature. The only claim made by Maycock that might require Skyline and General Insurance to respond under the statute was the letter of November 17, mentioned above, which made no claim whatever for materials furnished in October or up to November 7th, the date that at best Maycock claims that even the erroneously installed controls were replaced without charge or claim of any other nature. Maycock again relies on its own error when it claims this letter was a mistake. It is rather significant, however, that even if it were in error, the amount it claimed therein was identical to that claimed and billed in June, 1966, $13,504.94. Neither did the November letter, only document urged as being a notice of claim, comply with the statute the like of which, uniformly, is required to be followed strict-

ly. It would be to compound the original error of delivering the wrong material by duplicating it with an equally fatal error of failing to give the required statutory notice as to time of delivery being some time other than June, 1966, stated in such letter. The failure to follow the statute was in no way cured by testimony of any witness that delivery was made at any time other than stated in the notice, the document upon which the prime contractor and the insurer, under the facts, should have been able to rely. This, though Skyline conceded receiving a claim by certified mail on November 14, 1966,[1] but for an entirely different amount. It is interesting to note that over a year later, at time of suit, on motion for summary judgment, Maycock still claimed the identical $13,509.54 it claimed immediately upon delivery of the material in June, 1966, "supplied by him (Maycock) for which said claim is made" under the wording of the statute by which he urges entitlement.

Under the facts here we believe replacing the controls was a substitution to cure an error. It was somewhat akin to replacing or repairing an overloaded or defective fuse box. This seems impelling since no charge for labor or material was hinted even. We subscribe to the principles and cases cited in United States for Use of State Electric Co. v. Hesselden Construction Co., decided in our own Federal Cir-

1. Neither brief makes any reference as to where such claim appears in the record.

·cuit Court (10th Cir. 1958; 404 F.2d 774) under the similar Miller Act (40 U.S.Code § 270a et seq.).

Maycock relies quite heavily on Wilcox v. Cloward, 88 Utah 503, 56 P.2d 1 (1936) in support of its position, quoting extensively from some of its lengthy language, much of which is dictum. That case does distinguish, however, between performance of the contract and mere replacement or repair, as does the Hesselden case, supra. In the Wilcox case, where there was contradictory evidence, it was held that on familiar principles of appellate review, the trial court's finding that putting shingles on a roof was part of a contract to build a house, would not be disturbed. The court did not hesitate to note, however, that in a proper case, "where a contract to furnish materials is to be regarded as completed, *a subsequent gratuitous furnishing of material* in the nature of a *substitution* or *replacement* to remedy a *defect* in the material *originally delivered, will not operate to extend the time within which to claim a mechanic's lien.*" It is difficult to under-stand, why that case, with such concession, should be cited by Maycock, rather than in support of the instant case.

We are constrained to and do affirm the trial court's findings, conclusions and judgment here, as was done in the Wilcox case.

CROCKETT, C. J., and CALLISTER, TUCKETT and ELLETT, JJ., concur.