HIGHLAND CONSTRUCTION COMPA-
NY, a Utah corporation, Plaintiff
and Appellant,

v.

LaMar D. STEVENSON, dba LaMar D.
Construction Company, United States
Fidelity and Guaranty Company, a
Maryland corporation, and Shell Oil
Company, a Delaware corporation, De-
fendants and Respondents.

LaMar D. Stevenson, dba LaMar D.
Construction Company,
Third-Party Plaintiff.

No. 17099.

Supreme Court of Utah.

Aug. 28, 1981.

Opinion on Rehearing Dec. 15, 1981.

Ray G. Martineau, Roger P. Christensen, Salt Lake City, for plaintiff and appellant.

J. Rand Hirschi, David L. Wilkinson, Leland D. Ford, Salt Lake City, for defendants and respondents.

HOWE, Justice:

This appeal arises out of an action by an excavating sub-contractor, Highland Construction Company (hereinafter Highland), against the general contractor, LaMar D. Stevenson Construction Company (hereinafter Stevenson), Stevenson's bonding company, United States Fidelity and Guaranty Company (hereinafter USF&G), and Shell Oil Company (hereinafter Shell). Highland alleged that it suffered damages as a result of defective construction plans and unreasonable delays by Stevenson and Shell in the performance of their work. The trial court, sitting without a jury, found no cause of action on all claims of Highland. Stevenson's counterclaim for a declaratory judgment that Highland had been properly back-charged by Stevenson for certain items was granted. The court also awarded Stevenson attorney's fees and costs. Highland appeals.

On August 6, 1976, Stevenson entered into a contract with the State of Utah to perform all work in connection with the construction of what is known as the Duchesne River Road Project. The project was to upgrade a section of State Highway 35, located 5 miles north of Duchesne, Utah. During the first week of August 1976, Stevenson negotiated with Highland to have it perform some of the earth moving work. These negotiations culminated in Highland's agreement to do the earth moving, including the roadway excavation. This Stevenson-Highland contract was put into writing and signed on or about August 19, but was dated August 9.

During these negotiations, the president of Highland, Bryan Bergener, inspected the project site a number of times, as required by the terms of the general contract between Stevenson and the State which was incorporated by reference into the Stevenson-Highland sub-contract.

Highland moved onto the project site and began clearing and preparing the area for excavation on August 6. By August 12, it had encountered areas of water saturated soil and unstable road base. These conditions required it to perform some sub-exca-

vation in order to remove the unstable soil and replace it with a more stable base. This work was mainly performed in August in the days previous to the formal signing of the Stevenson-Highland contract on or about August 19.

On August 9, and consistent with industry practice, a pre-construction conference was attended by the representatives of all companies which would work on the project. The purpose of such meeting was to coordinate their activities. At the conference a spokesman from Shell stated that the relocation of its roadside pipes would be completed in about four days, but it was not actually completed until ten days later. Highland alleges that this delay by Shell unreasonably interfered with the progress of Highland's excavation.

While Highland was working on the excavation, Stevenson was installing some pipes and constructing a concrete-lined ditch. At various times the work of the two companies interfered and caused Highland to be delayed. And, on occasion Stevenson directed Highland's men and equipment to perform work which was the sole obligation of Stevenson.

On October 6, Highland removed its equipment from the project and Stevenson was forced to complete the excavation work at his own expense, which amount he back-charged Highland. A total amount of $83,-591.90 was received by Highland for the work it performed, which amount included an additional $6,600 for sub-excavation of the unstable subgrade.

On July 8, 1977, Highland commenced this action against the defendants alleging that the plans and specifications provided were defective and that they failed to reveal the existence of unstable road base. It further claimed that Stevenson had breached the sub-contract by causing it to be delayed in its work, and that Shell had also unreasonably interfered with its work progress. In addition, Highland sought reimbursement from Stevenson for the use of Highland's equipment, and for attorney's fees and costs.

After trial, judgment was entered in favor of the defendants, dismissing plaintiff's claims and granting defendant Stevenson's request for judgment declaring that he had properly back-charged Highland in the sum of $3,497 for work which Stevenson was required to complete by reason of plaintiff's abandonment of the jobsite before completion of its contractual obligations. The court also awarded the defendant Stevenson attorney's fees.

■ Highland's first point on appeal is that the trial court erred in finding that the plans and specifications which Highland used in preparation of its bid were not defective. The rule applicable to this assignment of error is that if there is any competent evidence to support the findings and conclusions of the trial court, such findings, and the conclusions rationally based thereon, will not be disturbed on appeal.

■ The judgment of the trial court is supported by competent evidence in this case. The record shows that Highland's president, Bryan Bergener, had access to detailed descriptions of all aspects of the project connected with his earth moving obligations, including the unstable soil conditions. A provision of the general contract which was incorporated by reference into the Stevenson-Highland subcontract provided in part that:

The bidder is required to examine carefully the site of the proposed work, the proposal, plans, specifications, supplemental specifications, special provisions and contract forms before submitting a proposal. Furthermore, the materials report, soil survey, plans and profiles, and test data pertaining to the proposed work are available for the bidders inspection at the Materials Test Division, 757 West 200 South, Salt Lake City, Utah, or the district office. The submission of a bid shall be considered prima facie evidence that the bidder has made the required examination and is satisfied as to the conditions to be encountered in performing the work

. . .

A provision in the Soil Survey Materials Report provided that:

*Soil Type and Range*: Project soil range from very plastic A–(9) (In-site weathered shale) to non-plastic A–1–a silty, sandy gravel.

*Drainage*: Natural surface drainage varies from good to poor. Some water accumulates in marshy and saturated zones that occur where irrigation water seeps from irrigation ditches and canals. The main area in which saturation zones occur lies between station 850 + 00 and station 910 + 00.

There was also a map of the project attached to the soil survey report which contained a notation with regard to soil conditions: "Some seeping from canal to drainage ditch, marsh and saturated areas."

Highland executed the subcontract on or about August 19, 1976, some two weeks after it had begun work on the project and had encountered the unstable soil. Furthermore, there was evidence adduced at trial that Mr. Bergener examined the project site sometime during the first week of June and observed the physical conditions of the soil, including seepage from the canal to a nearby drainage ditch. Also observable on the project site was marsh grass, alkali and surface water.

Based on the foregoing evidence, the trial judge could have properly concluded that Highland had notice of potential difficulties which might hinder its work progress and that the plans and specifications were not defective for failure to give such notice.

■ Plaintiff's second and third assignments of error are similarly aimed toward the trial court's finding of fact. Plaintiff alleges the trial court erred in finding that neither Stevenson nor Shell Oil Company subjected plaintiff to unreasonable delays by reason of their concurrent activities on the construction site. It appears from the record that Highland stipulated that it was aware at the time of entering into the contract with Stevenson that it was necessary that work on the utilities and other items be carried on simultaneously with Highland's earth moving operations and that such activities could reasonably be expected to interfere with the operations of

Highland. In support of the contentions that Stevenson and Shell caused plaintiff to be unreasonably delayed, plaintiff presented evidence in the form of testimony from Mr. Bergener and also pointed to the Stevenson-Highland contract wherein is contained a provision obligating Stevenson to complete certain work in advance of plaintiff's operation so as not to delay plaintiff's work progress. The evidence for the defendants Stevenson and Shell consisted primarily of testimony from the State Inspector who was required to be on the project during working hours to observe the progress of the construction. He testified that plaintiff's operations were not unreasonably delayed by Stevenson or Shell. Mr. Stevenson, who was also on the project during working hours, similarly testified that plaintiff was not unreasonably delayed in the progress of its earth moving by the activities of either Shell or Stevenson. Based on this conflicting evidence, the trial court found for the defendants. This Court will not disturb those findings where there is competent evidence to support them.

■ Highland next argues that the trial court erred by failing to apply the "total cost" theory to determine the dollar amount of damage suffered. This argument is of no avail because the trial court found that the defendants were not liable to Highland for *any* damage. For this reason, no further discussion of this assignment of error is necessary.

■ Highland's final contention is that the trial court erred in awarding Stevenson attorney's fees and in failing to award any fees to Highland. At the trial the parties stipulated that neither would then present evidence with respect to attorney's fees, but that consideration by the court of that matter would be deferred until after the court's ruling on the merits of the case in chief. Following the issuance of a memorandum decision in which the trial court ruled in favor of Stevenson, a hearing was scheduled for consideration of his request for attorney's fees. The hearing was not held because prior to the scheduled date, all par-

ties stipulated that the hearing could be waived and that if a hearing were held Stevenson and his attorney would testify that Stevenson had actually and necessarily incurred attorney's fees totaling $18,597, and that such amount was reasonable. Based on that stipulation, the court accordingly awarded Stevenson judgment for that amount of attorney's fees. That award was proper under Paragraph 6(e) of the sub-contract providing:

> In the event Sub-Contractor defaults in the performance of its obligations hereunder, Contractor shall be entitled to recover from Sub-Contractor all costs incurred in connection with the enforcement of Contractor's rights hereunder, including court costs and reasonable attorney's fees, whether incurred with or without suit or before or after judgment.

The trial court found that Highland had breached its sub-contract with Stevenson by failing to complete the work which it was required to perform under the sub-contract and by failing to obtain the final approval of Stevenson and the State inspectors before removing its men and equipment from the project. In view of that finding, the court properly awarded Stevenson attorney's fees incurred in "connection with the enforcement of [his] rights . . ."

 A more difficult question is presented as to whether Highland was entitled to be awarded any attorney's fees. In its complaint Highland prayed for attorney's fees in reliance upon § 14–1–8, U.C.A. (1953) providing that:

> In any action brought upon either of the bonds provided herein . . . *the prevailing party, upon each separate cause of action,* shall recover a reasonable attorney's fee to be taxed as costs. [Emphasis added.]

Highland claims to be "the prevailing party" because 164 days after it filed this action and while this action was pending in the court below, Stevenson admitted that he owed and he voluntarily paid Highland $10,300.78 of the amount it was suing for. In view of that payment after the action was started, Highland was "the prevailing party" with regard to that cause of action. It has been generally held that a party in whose favor an affirmative judgment is rendered, whether or not the judgment is for less than initially sought in the complaint, is a "prevailing party" within the meaning of a statute awarding attorney's fees to the prevailing party, *Peter Marich & Associates, Inc. v. Powell*, Fla.App., 365

So.2d 754 (1978); *Flagala Corp. v. Hamm*, Fla.App., 302 So.2d 195 (1974) (foreclosure of mechanic's lien), within the meaning of a contract giving attorney's fees to the prevailing party in the event of a lawsuit thereon, *Stott v. Cervantes*, 23 Wash.App. 346, 595 P.2d 563 (1979), and within the meaning of a statute awarding costs to the prevailing party, *Dawson v. Shearer*, 53 Wash.2d 766, 337 P.2d 46 (1959). It should make no difference whether the plaintiff recovers money from the defendant during the course of the action by voluntary payment or whether the plaintiff recovers that amount by a judgment. In both instances the plaintiff has recovered money by virtue of its action. See *Joseph Magnin Co., Inc. v. Schmidt*, 152 Cal.Rptr. 523, 89 C.A.3d Supp. 7 (1978). In the instant case, the $10,300.78 was long past due when paid by Stevenson and since it was paid, albeit voluntarily, after plaintiff's action was commenced the plaintiff Highland was indeed the "prevailing party" on that particular cause of action. In view of that fact, Highland was entitled to an attorney's fee under § 14–1–8 for a reasonable attorney's fee in bringing its action for the recovery of the $10,300.78 and maintaining that action until Stevenson made his payment. Since Highland recovered nothing further, legal services incurred in pursuing its action after the date of payment are not recoverable.

It is not fatal that Highland did not present any evidence to the trial court as to what would be a reasonable fee. Both parties there sought and presumably argued for attorney's fees, each claiming it or he should be the "prevailing party." They stipulated, however, that evidence with respect to amount of attorney's fees would not be presented until after the court had ruled on the merits of the case. When the court ruled in favor of Stevenson and denied Highland any attorney's fees, it was pointless for Highland to have then requested an opportunity to present evidence as to what its fees would have been. After the trial court's ruling on the merits in favor of Stevenson, the parties did not return to court since they were able to stipulate as to what Stevenson's evidence would be regarding his attorney's fees.

The judgment below is affirmed, but the case is remanded with directions for the trial court to fix and award a reasonable attorney's fee in favor of Highland in accordance with this opinion. No costs on appeal awarded.

OAKS, J., and THORNLEY K. SWAN, Retired District Judge, concur.

STEWART, J., having disqualified himself, did not participate; SWAN, Retired District Judge, sat.

MAUGHAN, J., heard the arguments but died before the opinion was filed.

HALL, Chief Justice, (concurring and dissenting).

I would affirm the judgment of the trial court without modification.

Highland's contention that it is a "prevailing party," and thus entitled to an award of attorney's fees, was not presented to the trial court, nor was any evidence offered in support thereof.[1] Consequently, Highland is precluded from raising the issue for the first time on this appeal.[2]

The assertion of the majority that it was not fatal that Highland did not present any evidence to the trial court as to what would be a reasonable fee is an *ipse dixit*. All that renders it other than fatal is the willingness on the part of a majority of the court to defy precedent and remand for the purpose of affording Highland a second opportunity to prove its case. The assertion also begs the issue presented by this appeal. Not only did Highland fail to present evidence of a reasonable fee, it also did not advance its theory, presented for the first time on appeal, that it was also a prevailing party.

Similarly, I am unable to subscribe to the further assertion of the majority that it was pointless for Highland to have requested an opportunity to present further evidence as to fees after the court found in favor of Stevenson. Had Highland's theory, as now advanced on appeal, been duly presented at trial, the trial court may very well have been just as enlightened as was this Court in discerning that there may be more than one prevailing party in a given lawsuit. However, it matters not what the ruling of the court *might* have been, the crucial point is that the issue *was not presented and ruled upon*. The unavoidable

consequence is that the issue was not preserved for appeal and Highland cannot now be heard to complain.[3]

## ON REHEARING

HOWE, Justice:

The Petition for Rehearing is denied, but the opinion of the Court is modified to provide that upon remand to the trial court, Stevenson shall be afforded the opportunity to present evidence that Highland is not legally entitled to attorney's fees either because the $10,300.78 paid Highland on December 19, 1977, was not past due, or that Stevenson had legal justification for not paying it before the commencement of the action.

HALL, C. J., OAKS, J., and THORNLEY K. SWAN, Retired District Judge, concur.

STEWART, J., having disqualified himself, does not participate herein; SWAN, Retired District Judge, sat.

MAUGHAN, J., heard the arguments but died before the opinion was filed.

---

1. That attorney's fees may not be awarded without a stipulation or evidence given as to the value thereof, see *Freed Finance Company v. Stoker Motor Company*, Utah, 537 P.2d 1039 (1975).

2. *Park City Utah Corp. v. Ensign Company*, Utah, 586 P.2d 446 (1978); *Edgar v. Wagner*, Utah, 572 P.2d 405 (1977).

