CITY ELECTRIC, a Utah corporation,
Plaintiff, Appellant and
Cross-Respondent,

v.

INDUSTRIAL INDEMNITY CO., a foreign corporation; and Valley Builders, a Utah corporation, Defendants, Respondents and Cross-Appellants.

No. 18610.

Supreme Court of Utah.

April 19, 1984.

Randall S. Feil, Geoffrey Heath, Salt Lake City, for plaintiff, appellant and cross-respondent.

K.L. McIff, Richfield, for defendants, respondents and cross-appellants.

HALL, Chief Justice:

This is an action under the former public contractors' bond statutes [1] in which plaintiff City Electric, a material supplier, seeks recovery against a general contractor and its surety [2] for the balance owing on materials and supplies alleged to have been furnished to a subcontractor.

On or about the 22nd day of August, 1979, defendant Valley Builders, Inc. (hereinafter "Valley"), a general contractor, entered into a contract with the North Sanpete School District to construct a new elementary school building in Fairview, Utah. On that occasion, a performance bond was executed by defendants Valley and Industrial Indemnity Company in favor of the school district.[3] On the following day, August 23, 1979, Valley engaged as its electrical subcontractor a firm known as Alert Electrical Associates (hereinafter "Alert"). The contract between Alert and Valley provided that Alert would be paid a sum of $153,386 in monthly installments.

---

[1]. U.C.A., 1953, § 14–1–5, *et seq.* Although these sections of the Code were repealed prior to the commencement of the present action, they were still in effect at the time the rights and obligations giving rise to the action accrued and are therefore applicable. *See* U.C.A., 1953, § 68–3–5; *Buttrey v. Guaranteed Securities Co.,* 78 Utah 39, 300 P. 1040 (1931).

[2]. The defense in this case was rendered by the general contractor, Valley Builders, Inc., as the principal on the subject bond, pursuant to a provision of the bond requiring the principal to indemnify and hold harmless the surety thereon, which in this case is defendant Industrial Indemnity Company.

[3]. Pursuant to former U.C.A., 1953, § 14–1–5.

By the summer of 1980, all but $13,641.33 of this amount had been paid by Valley.

Alert obtained the electrical supplies necessary to complete the Fairview job from at least three suppliers, the principal of which appears to have been the plaintiff. Payments for the materials purchased from plaintiff were made by Alert until January or February of 1981. On or about February 27, 1981, plaintiff gave written notice to defendants Valley and Industrial Indemnity, as well as to Alert, of its claim for delinquent payments on the Alert account.[4] Subsequently, in July, 1981, plaintiff contacted the president of Valley Builders, Arlo Jensen, and informed him that the Alert account was still delinquent and that the balance owing thereon was approximately $24,000. That conversation resulted in an agreement between Valley and the plaintiff whereby Valley would tender to plaintiff the balance of $13,614.33 owing on the electrical subcontract with Alert. This amount was to be tendered by check payable to the joint order of plaintiff and Alert. Endorsement of the check by both payees would constitute a waiver of all liens against the Fairview project. Furthermore, according to plaintiff's evidence regarding the agreement, negotiation of the check was to be contingent upon plaintiff's securing a promissory note and security from Alert to cover the difference between the amount owing on the account and the amount of the check. The check (dated August 7, 1981) was tendered in accordance with the agreement, and there was no further communication between plaintiff and Mr. Jensen until summons was served upon Valley some four months later (on or about December 7, 1981).

Upon receiving the check from Valley, plaintiff's witness testified that contact was made with Alert's principals, but plaintiff was unable to obtain the desired note and security agreement. Thus, plaintiff did not seek Alert's endorsement on the check in order to negotiate the same, inasmuch as to do so would be to relinquish its only source of security, the bonded Fairview project.

The instant action was commenced on November 23, 1981. At trial, plaintiff introduced two sets of invoices and sales slips against the Alert account totaling $65,251.09. The first set represented the materials that had been paid for, the total of which was some $43,885.89. The second or unpaid set totaled $21,365.20. Plaintiff also introduced into evidence the check for $13,641.33, which had been tendered to plaintiff pursuant to the aforementioned agreement between Valley and plaintiff. At the suggestion of the trial court, this check became the basis for a stipulation between the parties whereby Valley agreed to issue a new check payable solely to plaintiff in turn for the latter's agreement to indemnify Valley against any claim Alert might have against it. Thus, the amount sought by plaintiff was effectively reduced to $7,723.87 [5] or some twelve percent of the total value of the materials it claims to have furnished.

The trial court found that plaintiff failed to sustain the burden of proving that it furnished the materials for which it sought recovery and, further, that its action was not timely filed. The court granted judgments of no cause of action on plaintiff's complaint and in favor of each of the defendants. In addition, it incorporated into the judgment the stipulation of the parties wherein plaintiff was to be awarded $13,641.33 and defendant Valley Builders was to be indemnified against possible claims of Alert. The court declined to award attorney fees or costs to either party.

On appeal, plaintiff contends that (1) the trial court imposed an erroneous burden of proof in that it required plaintiff to show that the materials furnished to the Fairview job were actually incorporated therein; (2) even assuming the trial court's burden of proof were correct, the further re-

---

4. Pursuant to former U.C.A., 1953, § 14–1–6.

5. This figure does not include the interest that may have accumulated on the delinquent ac-

count. It is significant only to show the small percentage of the materials (allegedly furnished by plaintiff) actually at issue here.

quirement that delivery of the materials to the job site be proven was erroneous; (3) the court erred in holding that plaintiff's action was not timely; (4) the court's alternative inconsistent findings of fact constitute an improper and capricious attempt to insure against reversal; and (5) the evidence does not support the court's findings and conclusions.

Defendant Valley Builders cross-appeals for costs and attorney fees.

Plaintiff's first three contentions relate to the provisions of former U.C.A., 1953, § 14–1–6, which provided in pertinent part:

Every claimant who has *furnished labor or materials in the prosecution of the work provided for in such contract* in respect of which a payment bond is furnished under this act ... shall have the right to sue on such payment bond ....

... [N]o such suit shall be commenced *after the expiration of one year from the date on which the claimant ... furnished or supplied the last of the material* for which such suit is brought .... [Emphasis added.]

We are first called upon to determine the burden of proof contemplated by the underscored provision of the foregoing statute, to wit: "furnished labor or materials in the prosecution of the work provided for in such contract." The burden imposed by the trial court is set forth in its conclusions of law as follows:

The plaintiff had the burden of proof to show that the materials were *not only furnished* to the subcontractor, *but that such materials were used in the job in question,* and failing such proof cannot recover on the performance of materialman's bond. [Emphasis added.] [Conclusions of Law # 3.]

Plaintiff's version of the appropriate burden under the subject provision is that a claimant must prove only that the materi-als were "furnished" to the subcontractor in connection with a particular project, but not that the specific materials furnished were actually "used" or "incorporated" into the structure. This position rests primarily upon the decision of this Court in *Mine & Smelter Supply Co. v. General Insurance Co. of America.*[6] There, a materialman furnished electrical supplies to a subcontractor for use in the construction of a college administration building. The materialman recovered judgment in the trial court against the surety pursuant to the terms of § 14–1–6. The surety appealed, claiming that the trial court erred in including in the judgment the cost of materials furnished that were used by the electrical subcontractor on other jobs. This Court affirmed the entirety of the judgment, reasoning thus:

There was evidence that Forcht Electric, Inc. [the subcontractor], did use materials delivered to the building site on other jobs. However, the record shows the electrical contractor replaced materials from other sources.[7]

Plaintiff also relies upon two decisions rendered by the Tenth Circuit Court of Appeals, *Commercial Standard Insurance Co. v. United States*[8] and *Fourt v. United States,*[9] which were cited and relied upon by this Court in *Mine & Smelter, supra.* In both of those cases, the burden of proof under the identically worded federal contractors' bonding statute (Miller Act)[10] was stated to be as follows:

[T]he Miller Act does not require that the labor or material which has been furnished be actually used in or incorporated into the contract work. A recovery is permitted when the work or materials have been "furnished ... in the prosecution of the work." [Citation omitted.][11]

The court also held in those cases, as this Court did in *Mine & Smelter,* that the

---

**6.** 24 Utah 2d 330, 471 P.2d 154 (1970).

**7.** *Id.* 471 P.2d at 156.

**8.** 213 F.2d 106 (10th Cir.1954).

**9.** 235 F.2d 433 (10th Cir.1956).

**10.** 40 U.S.C. § 270b.

**11.** 213 F.2d at 108; 235 F.2d at 435. *See also* n. 2, 213 F.2d at 108.

burden was satisfied by evidence that the materials sold by the supplier had replaced materials in the subcontractor's inventory that were actually used in the project.[12]

■ Defendant Valley concedes the applicability of the aforementioned cases and thus the burden of proof articulated therein. It does not, however, concede the sufficiency of plaintiff's evidence (discussed *infra*), even under the more liberal burden. We likewise agree that the authorities cited above are dispositive of this issue. The claimant's burden under § 14–1–6 is to show only that the materials were "furnished" in connection with the particular project and not that the specific materials furnished were actually incorporated into the structure. The trial court's contrary findings and conclusions are in error.

■ We next address the question as to whether the claimant under § 14–1–6 has the burden of showing actual "delivery" of the materials in question to a particular job site. Valley took the position at trial that plaintiff's burden was to show not only actual "use" of the materials in the structure, but also "delivery" of the materials to the job site. This position appears to have been adopted by the trial court as reflected by the following statement in its memorandum decision (which served as the basis for its subsequent findings of fact and conclusions of law and judgment):

> The Court finds that although there was an invoice that was dated in November, 1980, the Court hasn't been convinced that the materials were *delivered to this job* and, consequently, the Court finds that this claim was not noticed or the case commenced within the statutory period of time. [Emphasis added.]

Furthermore, in its findings of fact the court stated:

That plaintiff's evidence failed to establish that the materials furnished Alert Electric, for which it claims compensation, were *actually delivered* to the Fairview Elementary School job site. [Emphasis added.]

Plaintiff's contrary position on this issue is again based upon the *Mine & Smelter* decision. Plaintiff points out that the claimant in that case satisfied the statutory burden without producing direct proof of "delivery" of the materials to the job site. Furthermore, plaintiff contends that even in those jurisdictions where proof of actual use or incorporation of materials is statutorily required, it is not always necessary to also prove "delivery." This latter contention is supported by a decision of the Oklahoma Supreme Court. In *Mid-Continent Casualty Co. v. P & H Supply, Inc.*,[13] the Oklahoma court resolved the "delivery" issue in the following manner:

> We have held ... that when it is established that certain material is delivered to the job site, a rebuttable presumption results that such material was consumed in the public works. We have never held that there may not be other bases for a rebuttable presumption that certain material was consumed in the public works.[14]

The court went on to enumerate eleven factors existing in that case which cumulatively established the rebuttable presumption of use or consumption in the particular public project.[15]

As indicated above, Valley's position at trial with respect to this issue was that plaintiff's burden could only be met by proving actual "delivery" of the materials to the job site. On appeal, however, Valley concedes that the statutory burden (i.e. "furnished labor or materials in the prosecution of the work provided for in such

---

**12.** 213 F.2d at 107; 235 F.2d at 434.

**13.** Okla., 490 P.2d 1358 (1971).

**14.** *Id.* at 1363.

**15.** Inasmuch as the Oklahoma Contractors' Bonding Statute differs significantly from our

own in that it specifically requires proof of actual "use" of the materials in the structure, we do not consider the eleven factors mentioned by that court as means for establishing a rebuttable presumption of "use" relevant to the present inquiry.

contract") can be established without such proof of "delivery."

This Court's decision in *Mine & Smelter*, as well as the decisions in other jurisdictions where similar statutory provisions have been interpreted,[16] supports the proposition that while proof of "delivery" is an important factor and can be determinative in establishing the statutory burden,[17] it is not an absolute requirement or element of said burden. We therefore deem the portion of the trial court's decision that equates the failure to establish "delivery" with the failure to satisfy the statutory burden to be in error.[18]

Having thus established what the burden of proof under § 14–1–6 *does not* entail, we now turn our attention to what it actually *does* entail. We consider the characterization of the burden provided in *Mine & Smelter, supra,* together with the decisions relied upon in *Mine & Smelter* (namely *Commercial Standard Insurance Co. v. United States* and *Fourt v. United States, supra*) to be adequate.

In *Mine & Smelter*, the Court considered the following evidence sufficient to satisfy the burden of proving the requisite "furnishing" of the materials in the prosecution of the particular job.

> During the course of the proceedings in the court below and by agreement of the parties, a master was appointed by the court to make a determination of the materials used in the construction and completion of the subcontract and the cost thereof. The master appointed by the court was Main LaFrentz & Co., an accounting firm of Salt Lake City. The master made an examination of· the records of Forcht Electric, Inc., and in

addition thereto it employed an electrical estimator who made a physical examination of the building in question to determine by physical inspection what electrical materials and supplies had been incorporated in the structure. After the master's report had been submitted to the court, the court conducted a hearing in respect to various disputed items included within the report. During several days of trial the respective parties produced evidence for and against their contentions pertaining to the costs of the materials used in the construction of the building. There was evidence that Forcht Electric, Inc., did use materials delivered to the building site on other jobs. However, the record shows the electrical contractor replaced materials from other sources.[19]

The Tenth Circuit articulated the quantum of evidence needed to satisfy the burden in the following manner:

> Evidence, *substantial in nature*, establishes that the materials which made up the last shipments, were ordered for the job, but on arrival were placed in the sub-contractor's inventory to replace identical items theretofore removed from the sub-contractor's inventory and used in the prosecution of the work provided for in the contract.[20] [Emphasis added.]

Plaintiff maintains that its evidence satisfied the burden established in the foregoing cases. We do not at this point, however, find it necessary to review the sufficiency of plaintiff's evidence as to all the materials allegedly supplied to Alert or even that portion (approximately 12%) which remains unpaid. Rather, we need only review the evidence pertaining to that

---

**16.** *See supra* n. 13; 39 A.L.R.2d 394 at 404–05 (1955).

**17.** *See Panhandle Pipe & Steel, Inc. v. Jesko,* 80 N.M. 457, 457 P.2d 705 (1969); 39 A.L.R.2d 394 at 405 (1955).

**18.** This conclusion of the trial court, standing alone, could be interpreted as a mere factor in the court's analysis of whether the requisite "furnishing" of the materials to the particular job was shown. However, said finding, when

read in conjunction with the court's ruling in its memorandum decision, *supra,* seems to take on the character of an absolute requirement or element of the burden of proof. *See Bill Nay & Sons Excavating v. Neeley Construction Co.,* Utah, 677 P.2d 1120 (1984).

**19.** *Supra* n. 6, 471 P.2d at 156.

**20.** 235 F.2d at 434; *see also* 213 F.2d 106, *supra* n. 8.

small portion of the materials allegedly furnished within the year prior to the institution of this action (i.e., after November 23, 1980).

The trial court found "[t]hat Plaintiff's evidence did not establish that it furnished materials utilized in the Fairview Elementary School within one year prior to the filing of its lawsuit."[21] It then went on to conclude:

> The Plaintiff's claim is barred by statute (§ 14-1-6 Utah Code Annotated 1953) since it was not commenced within one year following the furnishing of the last labor or materials to the job in question.[22]

Plaintiff disputes the foregoing ruling and thus brings precisely into issue the sufficiency of the evidence respecting the furnishing of materials after November 23, 1980.[23] If, as plaintiff suggests, the ruling is found to be erroneous, it will be necessary to consider as well the "sufficiency of evidence" or "satisfaction of burden" question with respect to the remainder of the alleged furnished and unpaid-for materials (i.e., those allegedly furnished prior to November 23, 1980).

Plaintiff's challenge to the statute of limitations ruling is twofold: (1) the evidence concerning the furnishing of materials during the disputed period was adequate; and (2) the trial court based its conclusion upon an improper test for timeliness.

As to the claim of adequate evidence, plaintiff points out that invoices and sales slips dated in late November and December of 1980, containing signatures of Alert personnel and specifically designating the Fairview project, were received into evidence. Furthermore, plaintiff points to the

testimony of Don Hatch (manager of plaintiff's Orem store) wherein he testified that he, in the company of Richard Mittlestead (City Electric's credit manager) made a detailed inspection of the Fairview structure and thereby drew the conclusion that the materials itemized on the sales slips and invoices were, in fact, installed in said structure. Plaintiff maintains that this on-site inspection was sufficient to carry its burden of showing that materials had been furnished in the prosecution of the Fairview job after November 23, 1980.

Plaintiff's second challenge to the ruling arises out of the trial court's finding "[t]hat Valley Builders substantially completed its contract with the North Sanpete School District on or about October 1, 1980."[24] The implication drawn from this finding by plaintiff is that the trial court considered the date of "substantial completion" as the date upon which the statute of limitations began to run and that materials furnished after said date could not extend the one-year limitation period. Plaintiff contends that the appropriate test for determining the timeliness of an action under § 14-1-6 is not the "substantial completion" date; it is rather whether the material in question was supplied as a " 'part of the original contract' or for the 'purpose of correcting defects or making repairs following inspection of the project.' "[25] This test, plaintiff indicates, is as was adopted in *United States v. Hesselden Construction Co.*[26] and subscribed to by this Court in *A.A. Maycock, Inc. v. General Insurance Co. of America.*[27]

■ Under familiar rules of appellate procedure, we are constrained to review the evidence in a light most favorable to

---

21. Findings of fact No. 14.

22. Conclusions of law No. 2.

23. Plaintiff filed this lawsuit on November 23, 1981. Thus, it had the burden of showing that materials were furnished within the year prior thereto.

24. Findings of fact No. 12.

25. *United States v. Hesselden Construction Co.,* 404 F.2d 774, 776 (10th Cir.1968); *see also United States for Use & Benefit of Austin v. Western Electric Co.,* 337 F.2d 568, 572–73 (9th Cir.1964).

26. *Id.*

27. 24 Utah 2d 369, 472 P.2d 424, 426 (1970).

the judgment of the trial court.[28] Furthermore, notwithstanding the trial court's application of an erroneous burden, we will affirm its decision if by applying the appropriate burden we arrive at the same result.[29]

■ Plaintiff contends that its evidence measures up to the standard of proof established in *Mine & Smelter*. Upon reviewing that evidence, however, we are not persuaded that it meets that standard. The testimony relative to the physical examinations of the structure made by two of plaintiff's agents suggests a rather sketchy inspection, especially when compared against the examination conducted in *Mine & Smelter, supra*. There was no evidence to indicate what electrical materials were required by the project and thus no specific breakdown as to what was observed in the inspection. Plaintiff's invoices and sales slips for the period in question (i.e., after November 23, 1980) were incomplete and many contained inconsistent information. Furthermore, although the argument was made that some of the materials supplied replaced materials in Alert's inventory that were actually used in the structure, no testimony or specific evidence was produced in this regard. This evidence most certainly falls short of the *Mine & Smelter* standard.

■ We further note that while we agree with plaintiff's analysis of the appropriate test for determining the timeliness of a § 14–1–6 action, we do not find plaintiff's evidence adequate to satisfy that test either. Nothing in the record indicates whether the specific items (to wit: buss fuses and an emergency ballast "bodine"), which were allegedly furnished after the crucial November 23, 1980 date, were com-ponent parts of the original contract or whether they were for the purpose of correcting defects or making repairs. Plaintiff therefore failed in its burden of going forth and satisfying this test.

Accordingly, the trial court did not err in its conclusion that plaintiff's evidence failed to satisfy the burden of proving materials were furnished in the prosecution of the Fairview job within one year prior to the institution of this action. Other matters raised in plaintiff's appeal are not mentioned herein, as this decision makes their resolution unnecessary.

We turn now to the sole issue raised by defendant Valley in its cross-appeal. Valley contends that it is entitled to attorney fees by reason of its successful defense in this action. This contention is premised upon the belief that the trial court's judgment of no cause of action against Valley rendered Valley a "prevailing party" under the terms of U.C.A., 1953, § 14–1–8.[30]

Plaintiff's rejoinder to Valley's position is that the stipulation resulting from the present action whereby Valley agreed to tender a check to plaintiff in the amount of $13,641.33 in return for plaintiff's promise of indemnification rendered plaintiff, rather than Valley, the "prevailing party." Plaintiff relies upon our recent decision in *Highland Construction Co. v. Stevenson*,[31] wherein we held, under circumstances very similar to those present here, that the party/plaintiff in whose favor a voluntary payment (*e.g.*, stipulation) had been entered was the "prevailing party" for purposes of § 14–1–8. We reasoned as follows:

> It should make no difference whether the plaintiff recovers money from the defendant during the course of the action

---

28. *Supra* n. 6, 471 P.2d at 156.

29. This rule comports with the well-settled rule most recently reaffirmed in *Bill Nay & Sons Excavating v. Neeley Construction Co.*, Utah, 677 P.2d 1120 (1984), to wit:
 [W]e will affirm a trial court's decision whenever we can do so as a proper ground, even though it was not the ground on which the trial court relied in its ruling.

30. Section 14–1–8 provides as follows:
 In any action brought upon either of the bonds provided herein, or against the public body failing to obtain the delivery of the payment bond, the prevailing party, upon each separate cause of action, shall recover a reasonable attorney's fee to be taxed as costs.

31. Utah, 636 P.2d 1034 (1981).

by voluntary payment or whether the plaintiff recovers that amount by a judgment. In both instances the plaintiff has recovered money by virtue of its action.[32]

We note an important distinction between the *Highland* case and the case at hand. In *Highland*, the Court emphasized the fact that the voluntary payment was obtained after the commencement of the action and by virtue thereof.[33] In the instant case, although plaintiff did receive a voluntary payment after the action was commenced, it had actually received a payment in the same amount several months prior to the institution of the lawsuit that it had refused to negotiate. Thus, the question to be decided is whether the stipulation or second payment of $13,641.33 was obtained by virtue of the lawsuit or, rather, was a mere extension of the first payment, which was received by virtue of an agreement between the parties. If the former situation is found to have occurred, then plaintiff would be the "prevailing party" under the authority of *Highland*, whereas the latter situation would render Valley the "prevailing party."

■ Upon examining the record in this regard, we find that the evidence supports the conclusion that the stipulation was more than a mere extension of the first payment and thus was obtained after the commencement of the action and by virtue thereof. As explained previously, the first payment was made in the names of both plaintiff and Alert as joint payees. Negotiation of that instrument by plaintiff would have resulted in a waiver of plaintiff's lien against the Fairview project (under the bonding statute). In stark contrast, the second payment was made to plaintiff as the sole payee, and the only string attached was that plaintiff indemnify Valley against possible claims Alert might have against Valley. Thus, the character of the first and second payments was entirely different, the second being much more beneficial

to plaintiff. We therefore hold that plaintiff was the "prevailing party" in this action and should be awarded attorney fees in accordance with the provisions of § 14–1–8 and the evidence proffered by plaintiff at trial in this regard. We therefore remand to the trial court for that purpose. In all other respects, the judgment is affirmed.

STEWART, HOWE, OAKS and DURHAM, JJ., concur.

PETITIONS FOR REHEARING

HALL, Chief Justice:

The petitions for rehearing are denied. However, plaintiff City Electric, in its reply to defendant Valley Builders, Inc.'s petition, seeks clarification of the scope of the attorney fees award. Accordingly, the following paragraph is added to the prior opinion:

Plaintiff's entitlement to attorney fees under § 14–1–8 rises no higher than the level of success actually achieved by plaintiff upon its claims. Thus, in light of the fact that plaintiff's recovery was limited to the stipulated payment, it having failed in all other respects as to its claims in the trial court and on appeal, the award of attorney fees is limited to the legal services incurred up to the point the stipulation was made and no further. This principle was recognized in the *Highland* case, *supra*, where the "prevailing parties'" recovery was likewise limited to a payment made voluntarily by the opponent. This Court held:

> Highland was entitled to ... a reasonable attorney's fee in bringing its actions for the recovery of the $10,300.78 [the amount recovered through voluntary payment] and maintaining that action until Stevenson made his payment. Since Highland recovered nothing further, legal services incurred in pursuing its ac-

---

**32.** *Id.* at 1038.

**33.** The following statements are illustrative: (1) "In view of that payment *after the action was started* ..."; (2) "[i]n both instances the plain-

tiff has recovered money *by virtue of its action* ..."; (3) "since it was paid, albeit voluntarily, *after plaintiff's action was commenced.*" (Emphasis added.) *Id.*

tion after the date of payment are not recoverable.[34]

STEWART, HOWE and DURHAM, JJ., concur.

OAKS, J., having resigned, does not participate herein.