2006 UT App 418

**MARK TECHNOLOGIES CORP., a California corporation; and Mark Jones, Plaintiffs and Appellants,**

v.

**UTAH RESOURCES INTERNATIONAL, INC., a Utah corporation; and John Fife, David Fife, Lyle D. Hurd Jr., and Gerry Brown, individuals, Defendants and Appellees.**

No. 20041103–CA.

Court of Appeals of Utah.

Oct. 13, 2006.

---

Reid W. Lambert and Anthony M. Grover, Woodbury & Kesler, Salt Lake City, for Appellants.

Rebecca S. Parr and Rod N. Andreason, Howrey LLP, Salt Lake City, and Craig M. White and Lucy C. Lisiecki, Wildman Harrold Allen & Dixon, Chicago, Illinois, for Appellees.

Before Judges BENCH, McHUGH, and THORNE.

## OPINION

McHUGH, Judge:

¶1 Mark Technologies Corporation and Mark Jones (collectively, Mark) challenge the trial court's finding that Mark failed to prove that Utah Resources International, Inc. (URI), John Fife, David Fife, Lyle D. Hurd Jr., and Gerry Brown (collectively, the Fife Parties) breached a "best efforts" clause contained in a settlement agreement between the parties. Mark also challenges the award of attorney fees to the Fife Parties. We affirm.

## BACKGROUND

¶2 The Fife Parties and Mark were involved in various disputes regarding the operation, management, and control of the business activities of URI. To resolve those disagreements and the three lawsuits initiated as a result of them, the Fife Parties and Mark entered into a settlement agreement on June 26, 1996. The agreement provides, in relevant part: "The Parties hereto shall exercise their best efforts to account for, pay, compromise, unwind, and/or terminate all existing contractual relationships between URI and Morgan Gas & Oil Co." Morgan Gas and Oil Company (MGO) was not a party to the settlement agreement.

¶3 On January 20, 1998, Mark filed the present lawsuit, claiming that the Fife Parties had failed to use their best efforts to terminate the contractual relationships between URI and MGO. Mark alleged that during the year and seven months between the execution of the settlement agreement and the filing of the complaint, the Fife Parties had taken no meaningful action to terminate the contracts between URI and MGO. The Fife Parties disputed Mark's allegations, claiming that they were involved in gathering and reviewing corporate records, resolving environmental issues, and partitioning property so that the two companies could unwind their business contracts. After brief-

ing and argument, the trial court granted summary judgment in favor of the Fife Parties on all claims. Mark appealed. This court reversed the grant of summary judgment on grounds that contested issues of material fact existed. After trial on remand, the trial court concluded that Mark had failed to satisfy its burden of proof that the Fife Parties had not used their best efforts and entered judgment and awarded attorney fees in favor of the Fife Parties. Mark filed this second appeal.

## ISSUES AND STANDARDS OF REVIEW

¶4 Mark contends that the trial court applied an incorrect standard for determining whether the Fife Parties used their best efforts and that the evidence does not support that finding. We review an interpretation of an unambiguous contract for correctness, giving no deference to the trial court. *See Crowther v. Carter,* 767 P.2d 129, 131 (Utah Ct.App.1989) (citing *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985)). "We give deference to the trial court's factual findings, however, and do not set them aside unless they are clearly erroneous." *Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶17, 989 P.2d 1077 (citing *Reliance Ins. Co. v. Utah Dep't of Transp.,* 858 P.2d 1363, 1366 (Utah 1993)).

¶5 Mark also appeals the award of attorney fees, claiming that it, and not the Fife Parties, was the prevailing party. "The award of attorney fees is a matter of law, which we review for correctness." *Jensen v. Sawyers,* 2005 UT 81, ¶127, 130 P.3d 325 (citing *Paul deGroot Bldg. Servs., L.L.C. v. Gallacher,* 2005 UT 20, ¶18, 112 P.3d 490).[1]

## ANALYSIS

I. Obligation to Use "Best Efforts"

¶6 Mark argues that the trial court confused the requirement that the Fife Parties use their best efforts with the less exacting covenant of good faith and fair dealing. While Mark is correct that an express best efforts clause imposes obligations that are

---

1. Mark does not challenge the amount of the award, but only the determination that the Fife

Parties were the "prevailing parties" and thereby entitled to any award.

different than those implied under the covenant of good faith and fair dealing, we do not agree that the trial court confused those concepts.

¶ 7 "Under the covenant of good faith and fair dealing, each party impliedly promises that he will not intentionally or purposely do anything which will destroy or injure the other party's right to receive the fruits of the contract." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991) (citations omitted). Thus, the covenant of good faith and fair dealing is superimposed upon the express terms of the contract so that a party is in breach if he intentionally interferes with the other party's enjoyment of the benefits of her bargain. In contrast, an express best efforts clause, like the one present here, creates an independent contractual obligation. The Kansas Supreme Court addressed the differences between these two obligations in *T.S.I. Holdings, Inc. v. Jenkins*, 260 Kan. 703, 924 P.2d 1239 (1996).

> [A duty to use best efforts] requires a party to make such efforts as are reasonable in the light of that party's ability and the means at its disposal and of the other party's justifiable expectations. Although the scope of this duty is no better defined than is the scope of the duty of good faith, it is clear that the duty of best efforts is more onerous than that of good faith.... *Good faith is a standard that has honesty and fairness at its core and that is imposed on every party to a contract. Best efforts is a standard that has diligence as its essence and is imposed on those contracting parties that have undertaken such performance.*

*Id.* at 1250 (emphasis added) (quotations and citation omitted).

¶ 8 Utah precedent provides little guidance on what a plaintiff must show to prove breach of an obligation to use best efforts. In *Carlson Distributing Co. v. Salt Lake Brewing Co.*, 2004 UT App 227, 95 P.3d 1171, the defendant appealed a jury verdict in favor of Salt Lake Brewing Company that found the defendant had failed to use its best efforts in the sale and marketing of beer. *See id.* at ¶¶ 1, 9. In affirming the verdict,

this court explained that " 'best efforts' is primarily a subjective standard under which a party agrees to do the best that it can regardless of the capabilities of others." *Id.* at ¶ 28. Thus, compliance with a best efforts clause must be measured subjectively in the context of the particular facts and circumstances involved. *See id.* Neither success nor the single-minded pursuit of the objective is required. *See Crowther v. Carter*, 767 P.2d 129, 132 (Utah Ct.App.1989) (stating that use of best efforts does not require a party to be successful); *Craig Food Indus., Inc. v. Taco Time Int'l, Inc.*, 469 F.Supp. 516, 528 (D.Utah 1979) (holding that plaintiff failed to prove breach of best efforts clause where defendant's collection of delinquent royalties created a difficult dilemma); *Foster Wheeler Broome County, Inc. v. County of Broome*, 275 A.D.2d 592, 713 N.Y.S.2d 92, 94 (2000) (holding that the mere fact that there was more that could have been done does not constitute breach of best efforts clause).

¶ 9 In *United Telecommunications, Inc. v. American Television & Communications Corp.*, 536 F.2d 1310 (10th Cir.1976), the United States Court of Appeals for the Tenth Circuit rejected a challenge to a jury instruction that combined the concepts of diligence and reasonableness in explaining the obligation to use best efforts. The jury instruction stated:

> A "best efforts" obligation does not require [defendant] to accomplish a given objective.... Rather, it requires [defendant] to make a *diligent, reasonable[,] and good faith effort* to accomplish that objective. The obligation takes into account unanticipated events and the exigencies of continuing business and does not require such events or exigencies be overcome at all costs. *It requires only that [defendant] exercise all reasonable efforts within a reasonable time to overcome any hurdles and accomplish the objective.* The fact that the objective is not accomplished is no indication that the party had not utilized its "best efforts."

*Id.* at 1318 n. 7 (emphasis added). Thus, while we agree with Mark that the trial court should consider the Fife Parties' diligence,

that analysis must be undertaken in light of all of the facts and circumstances, including any hurdles that had to be overcome. *See also EEOC v. R.J. Gallagher Co.*, 181 F.3d 645, 652 (5th Cir.1999) (" 'Best efforts' means such efforts as are reasonable in the light of that party's ability and the means at its disposal and of the other party's justifiable expectations." (quotations and citation omitted)); *Western Geophysical Co. of Am. v. Bolt Assocs., Inc.*, 584 F.2d 1164, 1171 (2d Cir.1978) ("The phrase 'best efforts to promote licensing' indicates a degree of discretion in the selection of the promotional plan. . . ."); *Great W. Producers Coop. v. Great W. United Corp.*, 200 Colo. 180, 613 P.2d 873, 878 (1980) ("The 'best efforts' obligation required that [defendant] and its board of directors make a reasonable, diligent, and good faith effort to accomplish a given objective. . . .").

■ ¶ 10 The trial court found that Mark did not meet its burden to establish, by a preponderance of the evidence, that the Fife Parties failed to use their best efforts to unwind the URI and MGO contractual relationships. In reaching that conclusion, the trial court stated:

> The unwinding of URI's relationship with MGO is a business proposition involving business decisions and strategies. It is difficult to second guess whether one strategy or decision was incorrect or represented a failure to exert best efforts. John Fife's approach was to first marshal, organize[,] and analyze the records of URI. He then resolved specific situations both directly and indirectly connected to the MGO unwinding, before working on a global resolution.
>
> . . . .
>
> The MGO unwinding did not occupy the top most priority of all his responsibilities. However, *"best efforts" does not mean to elevate the task above all others. It means to make the best effort possible in the context of the circumstances and situation.* Further, prioritizing within the unwinding process is appropriate. Fife made determinations that some things needed to be done before other things. It is difficult to find a failure of best efforts, even if

there are legitimate concerns with the order of priority.

(Emphasis added.) Mark argues that the test applied by the trial court is erroneous because it does not focus on whether the Fife Parties were "diligently" making efforts to unwind URI and MGO. *See National Data Payment Sys., Inc. v. Meridian Bank*, 212 F.3d 849, 854 (3d Cir.2000) ("The duty of best efforts 'has diligence as its essence' and is 'more exacting' than the usual contractual duty of good faith." (quoting 2 E. Allan Farnsworth, *Farnsworth on Contracts* 383–84 (2d ed.1998))). We do not agree that the trial court misapplied the best efforts test. There is no requirement that the word "diligence" be recited as part of the test used by the trier of fact. *See Macksey v. Egan*, 36 Mass.App.Ct. 463, 633 N.E.2d 408, 413 n. 16 (1994) ("The only plausible suggestion that [plaintiff] made for an addition to the [jury] charge spoke of 'diligence' and would not have made any material change in the meaning."). The trial court properly considered whether URI made "the best effort possible in the context of the circumstances and situation." In examining that effort, it made specific factual findings concerning the efforts that were made, the timing of those efforts, and the reasons for any perceived delay. The trial court considered the correct factors in evaluating whether the Fife Parties failed to exercise their best efforts to terminate the MGO contracts, and there was no requirement that it use the word "diligence" in describing its conclusions. *See Valcarce v. Fitzgerald*, 961 P.2d 305, 316 (Utah 1998) (stating that trial court was not required to use "magic words" where it considered the correct factors); *Bagshaw v. Bagshaw*, 788 P.2d 1057, 1061 (Utah Ct.App.1990) (same).

## II. Sufficiency of the Evidence

■ ¶ 11 Mark next argues that the trial court's factual findings do not support a judgment in favor of the Fife Parties. We disagree. In meeting its marshaling requirement, Mark set forth substantial evidence upon which the trial court could have relied in reaching its conclusions. Furthermore, the trial court's decision expressly sets forth

the factual basis for the court's conclusions.[2] After considering the evidence introduced by both parties at trial, the trial court stated that "the court is not convinced to a preponderance of the evidence that best efforts were not made by defendants, and finds no cause of action." Nevertheless, Mark asserts that the clear weight of the evidence supports a finding that the Fife Parties did not use their "best efforts" to terminate the contracts with MGO. Mark's arguments are "nothing but an attempt to have this [c]ourt substitute its judgment for that of the [district] court on a contested factual issue. This we cannot do." *Sweet v. Sweet,* 2006 UT App 216, ¶ 7, 138 P.3d 63 (alterations in original) (quotations and citation omitted).

### III. Attorney Fees

■ ¶ 12 Finally, Mark challenges the award of attorney fees to the Fife Parties. Mark claims that no action was taken to unwind the URI and MGO contracts until this lawsuit was filed. Therefore, Mark asserts that it actually prevailed by obtaining the desired result—termination of the contracts. Again, we disagree.

¶ 13 First, the trial court rejected Mark's argument that the Fife Parties did nothing to further the cancellation of the contracts prior to initiation of the lawsuit. In particular, the trial court found that "John Fife's approach was to first marshal, organize[,] and analyze the records of URI. He then resolved specific situations both directly and indirectly connected to the MGO unwinding, before working on a global resolution." Consequently, the trial court's findings are contrary to Mark's contention that the filing of the complaint prompted the Fife Parties to make their initial efforts to comply with the settlement agreement.

¶ 14 Second, this case is distinguishable from the decision in *Highland Construction Co. v. Stevenson,* 636 P.2d 1034 (Utah 1981), on which Mark relies. In that case, the plaintiff sued the defendant for damages allegedly caused by defective construction plans. *See id.* at 1035. One hundred and sixty-four days after the complaint was filed, the defendant admitted that he owed part of the amount claimed and paid more than $10,000 to the plaintiff. *See id.* at 1038. After a bench trial, the trial court entered judgment for the defendant on the remaining claims filed by the plaintiff, for the defendant on his counterclaims, and for attorney fees to be paid to the defendant. *See id.* The plaintiff appealed, claiming that it was entitled to attorney fees as the "prevailing party" on the claim for the $10,000 admitted to and paid by the defendant after the complaint was filed. *Id.* The Utah Supreme Court agreed: "It should make no difference whether the plaintiff recovers money from the defendant during the course of the action by voluntary payment or whether the plaintiff recovers that amount by a judgment. In both instances the plaintiff has recovered money by virtue of its action." *Id.* (citation omitted). In this case, the Fife Parties neither admitted liability nor paid any money to Mark. Instead, they denied the allegation that they had not used best efforts and persuaded the trial court to enter judgment in their favor after trial. The trial court did not err in concluding that the Fife Parties were the "prevailing parties" for purposes of awarding attorney fees.

### CONCLUSION

¶ 15 In concluding that Mark had not proved that the Fife Parties breached the best efforts clause in the settlement agreement, the trial court properly considered the efforts that were made, the timing of those efforts, and the facts and circumstances affecting the timing of those efforts. There was sufficient evidence in the record to support the findings and conclusions, and the trial court did not err in concluding that the Fife Parties were the prevailing parties.

¶ 16 Affirmed.

---

2. The trial court expressly rejected Mark's argument that the period during which there was no communication between MGO and URI supported a finding of breach, stating: "When considering strategies, priorities, [and] the other actions taken, the court cannot conclude that this period of no communication represents a failure of best efforts."

¶ 17 WE CONCUR: RUSSELL W. BENCH, Presiding Judge, and WILLIAM A. THORNE JR., Judge.